No. 111.—MADISON L. LENOIR, plaintiff in error, *vs.* JAMES C. WEEKS, defendant in error.

[1.] The Act of 1822, exempting "the common tools" of the debtor's trade from levy and sale, under execution, does not extend to a lawyer's library.

Claim, in Fulton Superior Court. Tried before Judge BULL, April Term, 1856.

The following statement of facts was agreed upon by Counsel for the parties in the Court below :

At the time of the rendition of the judgments on which the *fi. fa.* issued, the law books which were the subject of the levy, were the property of Samuel C. Elam the defendant in *fi. fa.* They were afterwards sold by the defendant in *fi. fa.* to the claimant, Madison L. Lenoir; that Elam was a practising Attorney, using said books, 66 volumes, as his law library; that he was a man of family, consisting of wife and children. At the time of the levy, the *fi. fas.* had been returned against the defendant, "*nulla bona.*" At the time of the purchase of the books by claimant, he was not an Attorney at Law but a law student, nor had he any family; that he bought the books in October, 1855, paid for them in November, was admitted to the bar in December, and the books were levied on in January and claimed by Lenoir; had no other law library and bought the books to use as a practising Attorney."

The Court decided that the books were subject to the *fi. fas.*; to which decision Counsel for claimant excepted.

BLECKLEY, for plaintiff in error.

UNDERWOOD; HAMMOND & SON, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

By the Act of 1822, (*Cobb's Digest,* 385,) "the common

tools" of a debtor are exempt from levy and sale under exe-.cution. Is the law library of an Attorney protected by the :Statute?

By the Judiciary Act of 1799, *all* the property, real and personal, of the defendant, is bound by the judgment and subject to its payment. The Act of 1822, therefore, being in derogation of the common rights of creditors to secure and collect their debts out of all the property of their debtors, .ought to have a strict construction. The word tool is defined to be some simple instrument used by the hand, and the object of the Legislature obviously was, to exempt arti-.cles of small value and of frequent and daily use by a poor mechanic, upon whose *manual* occupation of these tools his family depended for a subsistence. It was never intended that the debtor should be protected in carrying on an exten-.sive trade with a large capital, even in tools, while his credi-.tor was suffering for the money justly due him.

What is the other articles protected by the Act? Two beds and bedding, common bedsteads, a spinning wheel and two pair of cards, a loom and a cow and calf, common tools of his trade and ordinary cooking utensils. Did the Legislature intend to depart so far from the strict and appropriate meaning of the term " common tools," as to extend it to all the utensils of a distillery, the looms, spindles, &c. of a cotton or woollen factory, the forges and other instruments of .a manufactory of iron, and other complicated and expensive machinery, costing thousands of dollars? No such construction can be adopted without doing violence to the meaning of the Act. And we are entirely satisfied that a lawyer's library are not common tools of trade, within the true intent of the Act.

It has been suggested that the books of a scholar are exempt at Common Law from distresses. The reply to this is two-fold: First, the law of distresses is inapplicable, because the articles exempted under that law are, nevertheless, liable .still to be seized on *fieri facias.* (1 *Burr.* 587 ; 3 *Salk.* 136; *Wills*, 512.) And secondly, whatever may be the rule

of the Common Law, this question must be controlled in this State by Statute.