## KIRKSEY *v.* ROWE.

1. A horse the value of which does not exceed forty dollars may, though not worked upon a farm but used in running a dray for the support of the owner and his family, be exempted from levy and sale under the Civil Code, § 2866. The word " farm " in the phrase " one farm horse or mule,'' therein appearing, has reference to quality and value, and was not inserted in the law with a view to prescribing the kind of work in which the exempted animal was to be employed.

2. A half interest in a two-horse wagon can not, under that section, be lawfully exempted as a " one-horse wagon."

3. A set of harness does not fall within the descriptive words " common tools of trade," as used in that section.

Submitted February 10, — Decided March 11, 1902.

Petition for certiorari.    Before Judge Lumpkin.    Fulton superior court.    February 20, 1901.

*Hudson Moore* and *E. E. Pomeroy,* for plaintiff.
*Reynolds & McGill,* for defendant.

LUMPKIN, P. J.    The bill of exceptions in the present case assigns error upon the refusal of the judge of the superior court to sanction a petition for certiorari.    The correctness of this action on his part depends upon whether or not any one or more of the items of property below mentioned can be lawfully exempted under the Civil Code, § 2866, viz.: a horse, the value of which does not exceed forty dollars, used by the head of a family in running a dray for the support of himself and family; a half interest in a two-horse wagon, and a set of harness.    Under the section just cited, every debtor who is the head of a family may have exempted from levy and sale " one farm horse or mule," " one one-horse wagon," and the " common tools of trade of himself and wife."

1. A horse of the character and value above described may, under this section, be exempted, though not actually used upon a farm. The exemption is not allowed exclusively to agriculturists, but to " every debtor who is the head of a family."    The descriptive word " farm " was evidently intended to apply to quality and restrict value.    It was not used with a view to prescribing the kind of work in which the exempted animal was to be employed.    By the act of December 11, 1841, every head of a family was entitled to have exempted " one horse or mule, the value of which [should] not exceed fifty dollars."    Cobb's Dig. 389 – 390.    When the first code was prepared, the words limiting the value of the animal were omitted and the word "farm " introduced, and the law has thus remained until the present day.    Doubtless the codifiers and the General Assembly were of the opinion that the limitation as to value was too restrictive, and the above-noted change in the law was made for the purpose of allowing the exemption of an ordinary horse or mule such as is commonly employed upon a farm, though its value might exceed the amount specified in the act of 1841.

Certainly, a horse used in drawing a dray and not worth over forty dollars may properly be regarded as coming within the descriptive term "farm horse," notwithstanding his actual employment may be urban rather than rural in character.

2. We agree with his honor of the trial bench in holding that a half interest in a two-horse wagon can not be exempted as "one one-horse wagon." No amount of reasoning can alter the fact that a half interest in a two-horse wagon is not "one one-horse wagon," nor, indeed, a wagon of any kind.

3. We are also of the opinion that it was rightly adjudged by his honor below that a set of harness, whether double or single, does not fall within the descriptive words "common tools of trade." As a general rule, words used in a statute should be given their ordinary signification. Pol. Code, § 4. In Black's Law Dic. 1178, it is said: "The usual meaning of the word 'tool' is 'an instrument of manual operation'; that is, an instrument to be used and managed by the hand instead of being moved and controlled by machinery." In English's Law Dic. 784, we find the following definition of the word "tool": "An implement used by the hand in working. A hand instrument necessary to one's trade." According to Bouvier, this word, as used in exemption laws, "includes any instrument necessary for the prosecution of trade." 2 Bouv. Law Dic. 1124. The author cites a number of cases in which such articles as sewing-machines, pianos, violins, cornets, guns, etc., have been held to be tools within the meaning of exemption statutes. See, also, Cycl. Law Dic. (Shumaker & Longsdorf) 914, Anderson's Law Dic. 1039, and 2 Abbott's Law Dic. 572. In each of the works last mentioned there are numerous citations of decisions as to what do or do not constitute tools under various exemption laws. Some of these decisions evidently go further than our statute would authorize, in classifying as tools articles which are more properly designated as appliances or machines. That the word "tool" was intended to have a more restricted interpretation in Georgia is evidenced by the fact that under our law looms, spinning-wheels, cotton-cards and sewing-machines are specifically exempted. Such articles, under some of the decisions above referred to, might be regarded as mere tools. In the case of *Lenoir* v. *Weeks*, 20 *Ga.* 596, in which it was held that the "Act of 1822, exempting 'the common tools' of the debtor's trade from levy and sale under execution, [did] not extend

to a lawyer's library," Judge Lumpkin said (page 597): "The word tool is defined to be some simple instrument used by the hand, and the object of the legislature evidently was to exempt articles of small value and of frequent and daily use by a poor mechanic upon whose manual occupation of these tools his family depended for a subsistence. It was never intended that the debtor should be protected in carrying on an extensive trade with a large capital, even in tools, while his creditor was suffering for the money justly due him. What are the other articles protected by the act? Two beds and bedding, common bedsteads, a spinning-wheel and two pair of cards, a loom and a cow and calf, common tools of his trade and ordinary cooking utensils. Did the legislature intend to depart so far from the strict and appropriate meaning of the term 'common tools' as to extend it to all the utensils of a distillery, the looms, spindles, &c. of a cotton or woollen factory, the forges and other instruments of a manufactory of iron, and other complicated and expensive machinery costing thousands of dollars? No such construction can be adopted without doing violence to the meaning of the act." Whether a set of harness actually used in connection with a one-horse wagon can be exempted as a thing necessarily incidental to the use of the vehicle is not now decided.

We reverse the judgment complained of in the present case solely because of the erroneous ruling with respect to the exemption of a horse such as that referred to in the first division of this opinion.

*Judgment reversed. All the Justices concurring, except Little, J., absent.*