[No. 23711. Department One. May 4, 1932.]

THE STATE OF WASHINGTON, *on the Relation of Wahluke Investment Company, Plaintiff,* v. THE SUPERIOR COURT FOR WALLA WALLA COUNTY *et al., Respondents.*[1]

*Pedigo, Watson & Gose,* for relator.

*W. G. Coleman* and *John C. Hurspool,* for respondents.

PARKER, J.—The relator investment company, by this certiorari proceeding in this court, seeks review and reversal of an order of the superior court for Walla Walla county denying to it a writ of assistance by which it may be placed in possession of a large farm which it purchased at a mortgage foreclosure execution sale, to the end that it may enjoy such possession during the statutory period of redemption. The matter is presented to us for final disposition upon relator's petition for review and respondents' demurrer thereto.

The controlling facts may be summarized as follows: On December 8, 1931, a judgment was rendered

[1]Reported in 10 P. (2d) 986.

by the superior court for Walla Walla county, entitled Wahluke Investment Company v. George E. Lambdin and wife, whereby the investment company was awarded recovery against them in the sum of $62,518. The judgment decreed foreclosure of a mortgage upon a farm and livestock thereon, consisting of 4,000 head of sheep and a few head of other livestock, which had been executed by Lambdin and wife to secure the indebtedness for which the judgment was rendered against them; they being the owners of the farm and livestock and in possession thereof.

On December 22, 1931, the livestock was duly sold by the sheriff in accordance with the judgment and decree, and the proceeds thereof applied toward the satisfaction of the judgment. On January 16, 1932, the whole of the land and the improvements thereon were duly sold by the sheriff to the investment company, and the purchase price thereof applied toward the satisfaction of the judgment. On January 28, 1932, the sale was by the superior court duly confirmed and a certificate of sale accordingly issued by the sheriff to the investment company.

"At all times hereinbefore mentioned and now said lands are and were in area approximately eleven thousand (11,000) acres, approximately one hundred fifty (150) acres thereof used in raising alfalfa and wheat hay, approximately fifteen (15) acres thereof occupied by house, barn, sheds and corrals, and all of the remainder of said lands being uncultivated and used solely for pasture and grazing purposes, all of said lands and all improvements thereon and all of said personal property being then and now operated as a unit in the maintenance, keeping and care of said band of sheep on said lands and premises. That the portion of said lands used for the production of alfalfa and wheat hay as above set forth is so situated that same could be separated and operated separately from the remainder of said lands and premises. Following said

foreclosure sale, the relator demanded possession of all of said lands and premises, but same was refused by the defendants, George E. Lambdin and wife.'' (This quotation is from the relator's petition filed in this court.)

Thereafter, the investment company applied to the superior court for a writ of assistance, to the end that thereby delivery of possession of the whole of the land and premises be given to it during the redemption period. Lambdin and wife resisted this application, claiming the right to retain possession of all the lands and premises during the redemption period, as land used for farming purposes. On February 19, 1932, the matter came regularly on for hearing in the superior court, and being submitted for decision, the court denied the application, refusing to direct the issuance of a writ of assistance as prayed for by the investment company.

Our controlling statutory provisions relating to the right of possession during the redemption period following an execution sale of real property, are to be found in Rem. Comp. Stat., § 602, and, so far as here applicable, read as follows:

''The purchaser from the day of sale . . . shall be entitled to the possession of the property purchased . . . .: Provided further, that as to any land so sold which is at the time of the sale used for farming purposes, or which is a part of a farm used at the time of sale for farming purposes the judgment debtor shall be entitled to retain possession thereof during the period of redemption and the purchaser or his successor in interest shall if the judgment debtor do not redeem have a lien upon the crops raised or harvested thereon during the period of such possession for interest on the purchase price at the rate of six per cent per annum during the period of possession and for any taxes with interest: . . .''

This statutory right of possession in the purchaser during the redemption period has been given full force and effect by our decision in *McNulty v. Dean,* 154 Wash. 110, 281 Pac. 9, 66 A. L. R. 1417.

It is contended in behalf of the investment company that it is, at all events, entitled to possession during the redemption period of all of the grazing land. This contention is rested upon the theory that the grazing land is separable from the cultivated land and improvements, and was not at the time of the sale used "for farming purposes" within the meaning of the above quoted language from Rem. Comp. Stat., § 602.

We have seen that "all of said lands and all improvements thereon" were at the time of the sale "operated as a unit in the maintenance, keeping and care of said band of sheep on said land and premises." This, it seems to us, constituted a using of the whole of the land and premises, including the improvements thereon, "for farming purposes." It seems to us that the words "for farming purposes," as used in this statute, are not limited in their meaning to mere cultivation of the soil and the maintenance of improvements thereon for such restricted purposes; but that their meaning includes the raising of livestock as well as the production of farm crops directly from the soil.

In *Porter v. Yakima County,* 77 Wash. 299, 137 Pac. 466, there was drawn in question an attempt by Yakima county to levy and collect taxes upon a band of 2,300 sheep, kept and maintained in Benton county on a tract of grazing land aggregating some 20,000 acres, their owner residing in Yakima county. The controlling provision of our revenue statute (Rem. Comp. Stat., § 11134) reads:

"When the owner of livestock or other personal property connected with a farm does not reside there-

on, the property shall be listed and assessed in the county or place where the farm is situated; if not listed in said county, then to be taxed where found.''

Holding that the word ''farm,'' as used in that statutory provision, had a broader meaning than a tract of land maintained merely for the purpose of producing growing crops from the soil, Judge Gose, speaking for the court, said:

''The question to be determined is, What did the legislature mean by 'farm'? Clearly it was used in a generic rather than a restricted sense. The meaning to be ascribed to this word is that, where livestock has a home at a farm and the owner does not reside there, it shall be assessed in its home county. Where a tract of land, whether large or small, lying wholly within a single county, is used as a unit for the breeding, rearing, and feeding of stock, and the stock are there kept during the larger part of the year, as these sheep were kept in Benton county, the tract is a farm and the stock is 'connected with farm' within the meaning of the statute. A tract of land devoted to the breeding, grazing, shearing, and lambing of sheep is a farm, as much as a tract that is devoted to the growing of grain or to diversified farming. In short, a tract may be a farm without the aid of a plow. In common parlance, the words farm and ranch are used interchangeably. In Webster's New International Dictionary, a farm is defined as a 'plot or tract of land devoted to the raising of domestic or other animals; as, a chicken farm; a fox farm.' In *People ex rel. Rodgers v. Caldwell,* 142 Ill. 434, 32 N. E. 691, the word farm in a like statute is defined as 'a body of land usually under one ownership devoted to agriculture, either to raising of crops or pasturage, or both.' ''

In addition to the authorities there cited, we note the following which lend support to that conclusion: *Succession of Williams,* 132 La. 865, 61 South. 852; *Dorsett v. Watkins,* 59 Okla. 198, 158 Pac. 608, 9 A. L. R. 278; *Gordon v. Buster,* 113 Tex. 382, 257 S. W. 220.

We are of the opinion that all of the grazing land, together with all of the cultivated land, including the improvements thereon, constituted a "farm;" that is, a single unit of farming property used at the time of the sale "for farming purposes" within the meaning of this statute; and that, therefore, the investment company does not have the right of possession of any part thereof during the redemption period, as held by the trial court.

Some contention is made in behalf of the investment company rested upon the theory that the statute giving to the purchaser a lien upon "the crops raised or harvested" upon the land for interest on the purchase price, if the owner does not redeem, argues that the words, "used for farming purposes," mean only such land as produces growing crops thereon capable of being subjected to such lien. We do not think this suggestion is persuasive of any such limited meaning to be attributed to the words "used for farming purposes." Those words seem to us to mean stock raising purposes as well as crop raising purposes.

Since we have arrived at the conclusion that the grazing lands are as much a part of the land "used for farming purposes" as any other part thereof, it, of course, follows that the cultivated portion of the land and the improvements upon the land must also remain in the possession of Lambdin and wife under their claim of possession thereof during the redemption period.

We conclude that the order of the superior court must be affirmed. It is so ordered.

TOLMAN, C. J., BEELER, MITCHELL, and HERMAN, JJ., concur.