27986. MEADOWS *et al. v.* DIXON.

DECIDED FEBRUARY 15, 1940.

*C. T. McCorkle*, for plaintiffs in error.
*Lankford & Rogers, Jackson & Darby*, contra.

FELTON, J. The only question for decision in this case is whether or not the employee was a farm laborer within the meaning of the workmen's compensation act. The employer was engaged in producing turpentine and resin. In *Pridgen* v. *Murphy*, 44 *Ga. App.* 147 (160 S. E. 701), and in *Moody* v. *Tillman*, 45 *Ga. App.* 84 (163 S. E. 521), decided in October, 1931, and February, 1932, respectively, this court held that a turpentine operator was not a farmer within the meaning of the workmen's compensation act. It had previously been held by the Federal courts that the turpentine business was not "agriculture." United States *v.* Waters-Pierce Oil Co., 196 Fed. 767; Union Naval Stores Co. *v.* United States, 240 U. S. 284 (36 Sup. Ct. 308, 60 L. ed. 644).

It is contended by the plaintiff in error that since the passage of the act of 1933 (Ga. L. 1933, p. 282) designating gum turpentine and the products processed therefrom as agricultural commodities and agricultural farm products, one engaged in the business of processing or producing these products should be classed as a farmer. The caption of this act and the act itself are as follows: "An act to define gum turpentine and the products as processed therefrom by the original producer as agricultural commodities and agricultural farm products. Section 1. Be it enacted by the General Assembly of Georgia, and it is hereby enacted by the authority of the same, that from and after the passage of this act, except wherein

such statute or law expressly otherwise provides, the term 'agricultural commodities' and 'agricultural products' and 'farm products' shall include and embrace crude gum (oleoresin) from a living tree or trees, and the following products as processed by the original producer of the crude gum (oleoresin) from which derived, to wit: spirits of turpentine, as defined in Code of Georgia, 1926, section 1823 (2), and Acts 1925, page 318, and Naval Stores Acts 1923." This act is now codified as § 5-1617. At the same session of the General Assembly there was passed an act (Ga. L. 1933, p. 128) defining "crops" and "growing crops" as used in existing statutes relating to bills of sale, mortgages, and liens to secure debt, and as used in statutes declaring crops to be personalty. This act provided that, as used in the statutes set out, the word "crops" embraced the fruits and products of all plants, trees, etc., whether the same be annual or perennial plants or trees, and in section 2 of this act, it is provided that the term "agricultural commodity" includes crude gum (oleoresin). This act is now codified as § 67-1107, and is placed in the Code in Title 67, covering "Mortgages, Conveyances to Secure Debt, and Liens." Before the passage of these acts, at common law and by the law of Georgia, the crude gum was a part of the realty, and only became personalty when it was taken from the tree. As a part of the realty, under the law as it then existed, it was not such a crop as could be mortgaged to secure advances, nor could a bill of sale thereto be given to secure advances for the gathering of the crude gum. Since these acts are in derogation of the common law they must be strictly construed and the intention of the legislature carried out if that intention can be gotten from the acts themselves. In our opinion it was the intention of the legislature, in passing these acts, to classify the products of the pine tree as personalty solely for the purpose of enabling turpentine operators to obtain credit on their products by the giving of bills of sale or mortgages, and for no other purpose. Had the purpose been otherwise, it would have been very easy for the legislature to have gone just a little further and said that one engaged in the production of turpentine was to be classed as a farmer for all purposes.

That the intention of the legislature was only to facilitate credit to those in the turpentine business is further evident by the sentence in the act which says, "except wherein such statute or law expressly otherwise provides, . . . 'farm products' shall include . .

oleoresin." From this sentence it will be seen that the legislature did not intend to classify turpentine products as farm products for all purposes, but that any earlier laws or acts which classified them otherwise would still be of force and effect. We will assume that the General Assembly was cognizant of the decisions of this court holding that one engaged in the turpentine business was not a farmer, and had it desired or intended that it be held otherwise it has had more than ample opportunity to pass an act so stating.

Finally, in order to carry out the beneficent purposes of the workmen's compensation act we must place a liberal construction thereon where it is necessary to construe the act. Giving the act a liberal construction, we are constrained to hold that the law has not been changed with reference to the classification of turpentine operators, and that the court did not err in holding that the Industrial Board was correct in finding that the plaintiff in error was not a farmer within the meaning of the act and in affirming the award of compensation to the injured employee of the turpentine company.

*Judgment affirmed. Stephens, P. J., and Sutton, J., concur.*