# WILLIAM F. O'NEIL v. A. F. OYS & SONS, INC. AND OTHERS.[1]

January 28, 1944.

No. 33,666.

[1]Reported in 13 N. W. (2d) 8.

*M. J. Timmons,* for appellant.

*O. A. Brecke* and *E. T. Chesnut,* for respondents.

MAGNEY, JUSTICE.

On October 6, 1938, by written instrument, plaintiff leased to defendant A. F. Oys & Sons, Inc. a certain store building in the city of Minneapolis for a term of five years from December 1, 1938, at a yearly rental of $720, payable in equal monthly payments of $60. Lessee took possession and operated a retail store in the premises until the corporation was dissolved in December 1940. It paid its bill, and Oys Brothers, a copartnership composed of defendants John J. Oys and Charles F. Oys, succeeded to the business and assets of the store. They "started out with a clean sheet." No mention was made of the original lease, and plaintiff had no lease with them. They continued to pay rent until May 1942. Prior to that time they had ceased doing business, but their fixtures were still in the building. A Mr. Miller was interested in buying the fixtures and renting the building, but did not want to pay $60 a month in rent. Oys Brothers asked plaintiff to lower the rent at the expiration of the lease so that they could sell the fixtures and get the tenant. Plaintiff told Miller that he would reduce the rent to $50 a month at the expiration of the lease. Miller still insisted on lower rent, so Oys Brothers agreed with Miller to pay him $20 a month for the balance of the term of the lease. John Oys then notified plaintiff that Miller would pay $40 a month and Oys Brothers would pay to Miller $20 additional. Miller then purchased the fixtures and took possession of the store in May 1942. The first check, the one for June 1942, was for Miller's rent, according to the testimony of plaintiff. The payment of the rent was taken care of in this manner: Miller would make out a check for $40 to Oys Brothers and take it over to them. Oys Brothers would endorse it, hand it back to him, and give him $20. This was an arrangement between Miller and Oys Brothers only. Plaintiff would then go to the store and get the check and the additional $20 from Miller. This arrangement was continued until October 1942, when Miller

vacated the store. There was no written assignment of the lease to Miller, nor any consent in writing by plaintiff. During Miller's occupancy plaintiff did not go to Oys Brothers for rent. From May 1942 on, Oys Brothers had no key to the building.

Plaintiff brought this action against A. F. Oys & Sons, Inc., John J. Oys, and Charles F. Oys to recover rent for the months of November and December 1942. The court directed a verdict in favor of plaintiff against the corporate defendant and in favor of the individual defendants. Plaintiff appeals from the order denying his motion for a new trial as to the individual defendants.

There was no express contract of any kind between plaintiff and Oys Brothers. The written lease was signed by A. F. Oys & Sons, Inc. only. After the corporation ceased doing business and was dissolved, Oys Brothers simply paid the rent and plaintiff accepted it. He contends that Oys Brothers took over all the assets of the corporation and assumed all its liabilities, thus creating an implied contract to pay the rent. The testimony does not sustain this claim. Oys Brothers did not take over all the assets of the corporation. They were not its only stockholders. Assets were also distributed to other stockholders. The partnership did not assume any of the liabilities of the corporation. It did not operate under the same or a similar name. No implied contract to pay the rent can be spelled out of these facts.

Plaintiff cites several cases in support of his contention. Clearly, they do not apply to our situation. In Fena v. Peppers Fruit Co. 185 Minn. 137, 239 N. W. 898, an individual organized a corporation for the specific purpose of taking over a business which he had long operated as a sole trader. The new corporation took over all the assets and outstanding contracts of the former business. There was no change in name. This court held that under those facts the corporation was liable for a debt of the business outstanding when the corporation took over. A somewhat similar situation existed in National Cash Register Co. v. Ness, 204 Minn. 148, 282 N. W. 827.

■ As has been shown, there was no express contractual relationship of any kind between Oys Brothers and plaintiff and no facts upon which an implied contract could be predicated. No privity of contract existed between these parties. When Oys Brothers took over the store, they became assignees of the leasehold and bound to the lessor by privity of estate. As such assignees, they were liable for rent during the time they occupied the premises. This obligation they have discharged.

This question was considered and determined in Dickinson Co. v. Fitterling, 69 Minn. 162, 164, 71 N. W. 1030, 1031, where the court stated: "When a third person is in possession of leased premises under the lessee, the law presumes that the lease has been assigned by the lessee to such person." Citing 1 Washburn, Real Property (4 ed.) § 5, subsec. 3; Frank v. New York, L. E. & W. R. Co. 122 N. Y. 197, 25 N. E. 332; Ecker v. C. B. & Q. R. Co. 8 Mo. App. 223. The court held that such assignee was liable for rent during the time it was in possession. No testimony in this case overcomes the presumption.

■ The lease between plaintiff and the corporate defendant required the written consent of the lessor to any assignment. Acceptance by the lessor of the rent from the assignee with knowledge of the assignment waives such a provision. Dickinson Co. v. Fitterling, *supra*, and Cohen v. Todd, 130 Minn. 227, 229, 153 N. W. 531, L. R. A. 1915E, 846, where this court said:

"'* * * A covenant against assignments without the written consent of the lessor is one inserted for the lessor's benefit, and he may waive the requirement of written consent by his conduct."

To the same effect, see W. C. Hines Co. v. Angell, 188 Minn. 387, 247 N. W. 387.

■ In May 1942, Miller went into possession for the balance of the term of the original lease. Plaintiff understood and recognized this fact and agreed to reduce Miller's rent to $50 per month at the expiration of the lease. There was a complete assignment to Miller of the whole term. Plaintiff went to Miller each month and collected from him the full amount. Miller's possession was ex-

clusive. Oys Brothers retained no right of possession or control and from May 1942 had no keys to the premises.

Oys Brothers were not liable for the rent after Miller went into possession. Their liability in the first instance was based on privity of estate and not on privity of contract, and when they gave up possession and assigned the lease to Miller, their liability ceased. The principle of law applicable here is stated in Cohen v. Todd, *supra,* as follows (130 Minn. 227, 153 N. W. 531, L. R. A. 1915E, 846):

"This is an action to recover from an assignee of a lease rent which accrued after he had made a reassignment and delivered up possession to a second assignee. The action cannot be maintained: The assignment to defendant was a naked assignment. Neither by the terms of the assignment, nor in any other manner, did defendant assume any contract obligation to pay rent. As long as he held the property under his assignment the law required him to pay rent according to the terms of the lease. But when he again assigned the term and delivered up possession to a second assignee, his liability for rent thereafter to accrue ceased. This has been the rule of the common law consistently followed for more than 200 years."

In McLaughlin v. Minnesota L. & T. Co. 192 Minn. 203, 211, 255 N. W. 839, 842, Mr. Justice Stone puts it this way:

"Absurd as it may seem to the modern and sensible aversion to anything which smacks of sham, it remains law that an assignee of a lease may, by assigning it, even to a pauper, put an end to his liability in point of time. See annotation, Ann. Cas. 1916E, 788, 805; Cohen v. Todd, 130 Minn. 227, 153 N. W. 531, L. R. A. 1915E, 846. The legal operation is simple. The holder of it divests himself of the title, the thing to which the obligation is fastened, and so rids himself of the whole burden."

The decision in S. T. McKnight Co. v. Central Hanover B. & T. Co. (8 Cir.) 120 F. (2d) 310, is to the same effect.

■ Whether Miller be considered a subtenant or an assignee of Oys Brothers, the same legal result follows. If an assignee, the

assignment puts an end to any liability on the part of Oys Brothers. It terminated the privity of estate between plaintiff and Oys Brothers. If Miller be considered a subtenant, we find the same resulting situation. Under the arrangement between Oys Brothers and Miller, Oys Brothers reserved no reversionary interest. It was a sublease for the full term. Such a sublease is in law an assignment. 4 Dunnell, Dig. & Supp. § 5406, states the rule:

"Subletting is a leasing by the lessee of a whole or part of the premises for a portion of the unexpired balance of his term. A transfer is not a subletting unless the lessor retains a reversionary interest. A sublease for the whole term is in law an assignment as between the original lessor and the sublessee, but may be given effect as a contract as between the sublessor and sublessee."

Davidson v. Minnesota L. & T. Co. 158 Minn. 411, 197 N. W. 833, 32 A. L. R. 1418.

The trial court excluded certain evidence. We find no error in its rulings.

Order affirmed.

MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.

