## COLLINS, tax collector, *et al. v.* MILLS *et al.*

No. 14885.  July 10, 1944.

*Blair & Carmichael, George D. Anderson,* and *H. C. Schroeder,* for plaintiff in error.

*W. S. Northcutt,* contra.

BELL, Chief Justice. (After stating the foregoing facts.) ■ In 1912, the constitution was amended so as to provide that the General Assembly shall "have power to exempt from taxation, farm products, including baled cotton, grown in this State and remaining in the hands of the producer, but not longer than for the next year after their production." Ga. L. 1912, p. 36; Code, § 2-5002. In 1913, the General Assembly passed an act for the express purpose of putting "in force" the amendment of 1912, and the descrip-

tive words were the same as in the constitutional amendment. Ga. L. 1913, p. 122. Therefore the real question is the meaning of the words as they appear in the constitution.

A provision of the constitution is to be construed in the sense in which it was understood by the framers and the people at the time of its adoption. Accordingly, the amendment of 1912 means now precisely what it meant at that time. *Padelford* v. *Savannah,* 14 *Ga.* 438 (5); South Carolina *v.* United States, 199 U. S. 437 (26 Sup. Ct. 110, 50 L. ed. 261, 4 Ann. Cas. 737, 11 Am. Jur. 694, § 61). Compare *Carter* v. *Marble Products Inc., 171 Ga.* 49 (154 S. E. 891).

The business of farming, however, may change both as to method and as to things produced, and changes in the latter respect may from time to time add new crops to the catalogue of farm products. In such case, the exemption would apply to the new products, as well as to the old, and would do so, even though the new products may have been entirely unknown, and hence not specifically within the minds of the people at the time such constitutional provision was adopted. This would involve only an application of the same constitution to new conditions arising by natural processes, and would not mean that the constitution itself had been changed. In re Debs, 158 U. S. 564, 591 (15 Sup. Ct. 900, 39 L. ed. 1092); United States *v.* Classic, 313 U. S. 299 (61 Sup. Ct. 1031, 85 L. ed. 1368). Nor can the constitution be changed by any legislative definition, or other provision, in a mere statute. Thus, if lumber was not a farm product in 1912, it is not a farm product now, unless it has become such through actual change in the scope of farming.

Several statutes have been enacted in the meantime, as follows: The co-operative marketing act of 1921, in which it was declared that "agricultural products" shall include, among other things, "forestry products." Ga. L. 1921, p. 139, Code, § 65-201. The motor-carrier act of 1931, declaring in effect that its provisions shall not apply to carriers engaged exclusively in transporting "agricultural products," and defining this phrase as including, "wood, lumber, . . also fish and oysters, and timber and/or logs being hauled by the owner thereof, or his agents and/or em-ployees between forest and mill or primary place of manufacture." Ga. L. Ex. Sess., 1931, pp. 99, 100 (Code, § 68-502). The act of

1933, providing that the words "crops" and "growing crops," as used in statutes relating to bills of sale, mortgages, and liens to secure debt, should include and embrace "fruits and products of all plants, trees and shrubs, whether the same be annual or perennial plants, trees, and shrubs." Ga. L. 1933, p. 128, Code, § 67-1107. The act of 1939, declaring that "the planting, growing, cultivation, harvesting, and marketing of trees and the fruits and products thereof shall be considered and treated under the laws of Georgia as an agricultural pursuit." Ga. L. 1939, p. 240 (Ga. Code Ann., § 67-1107).

None of these statutes could enlarge the meaning of the phrase "farm products" as it appeared in the constitutional amendment of 1912; nor did any of them deal or purport to deal with taxation, or exemption from taxation. Accordingly, none of them can be accepted as determining that lumber is a farm product, for the purposes of this case. See, in this connection, *Mitchell* v. *Lasseter,* 114 *Ga.* 275 (3) (40 S. E. 287); *White* v. *State,* 121 *Ga.* 592 (2) (49 S. E. 715); *Meadows* v. *Dixon,* 61 *Ga. App.* 697 (7 S. E. 2d, 229). This is not to hold that legislative interpretation may not be considered as an aid in construing doubtful provisions of the constitution, under the general rule as to contemporaneous construction. 11 Am. Jur. 699, § 79. There was nothing in the nature of interpretation in any of those acts. They simply declared statutory definitions.

In *Epping* v. *Columbus,* 117 *Ga.* 263 (43 S. E. 803), it was said: "In interpreting the provisions of a constitution, it is to be presumed that the words therein used were employed in their natural and ordinary meaning; and where a word has a technical as well as a popular meaning, the courts will generally accord to it its popular signification, unless the nature of the subject indicates, or the context suggests, that it is used in a technical sense. Constitutions are the result of popular will, and their words are to be understood ordinarily in the sense they convey to the popular mind."

In Bouvier's Law Dictionary (1928), it is stated that agriculture, in a general sense, "is the cultivation of the ground for the purpose of procuring fruits and vegetables for the use of man and beast; or, the act of preparing the soil, sowing and planting seeds, dressing the plants, and removing crops. In this sense the word

includes gardening or horticulture, and the raising or feeding of cattle and other stock." The term "agriculture" is at least as broad as that of *"farming,"* even if not broader, as some courts have said. 3 Words & Phrases (Perm. ed.), 46.

In *Pridgen* v. *Murphy,* 44 *Ga. App.* 147 (160 S. E. 701), it was said: "The word 'farming,' in its ordinary sense, signifies the cultivation of land for the production of agricultural crops, with incidental enterprises, and does not include the operation of a turpentine business, which is carried on by extracting the sap of pine trees and converting it into rosin and spirits of turpentine. Hence a person employed as a woods rider in the turpentine business is not a farm laborer within the meaning of the compensation act. See, in this connection, 2 C. J. 988; 25 C. J. 673; *Kent* v. *Lane,* 168 *Ga.* 133 (147 S. E. 61), and cit. This is true, notwithstanding the one engaged in this business is sometimes referred to as running a 'turpentine farm' and the trees may be worked in groups described as 'crops.'" See also *Davis* v. *Macon,* 64 *Ga.* 128 (4), 135 (37 Am. R. 60).

In common usage, do we not ordinarily regard farming and farm products as matters pertaining to the soil and to fields, and not to forests or timbered lands? Inquire of any farmer as to the quantity of land that he is cultivating or "farming," and he will probably answer solely in terms of "cleared land."

While in recent years there may have developed a tendency among owners of land to plant and cultivate young saplings and to care for them as they grow, somewhat after the manner of agriculture, for the purpose of producing trees that may finally be suitable for timber, yet is this not an exception, and such a rare exception that it would not ordinarily be suggested to mind by the term *farming?*

Moreover, assuming that such culture of trees is becoming, or has become a part of agriculture or farming in this State, it still might be asked whether this type of work has been done anywhere for such length of time that any trees so cultivated have as yet become large enough to be used for sawmill purposes. Accordingly, if such was the case as to any of the lumber in question, and if in such circumstances the lumber would be exempt as a farm product, we think that the facts would still be so exceptional as to render it incumbent on the plaintiff to allege them, in asserting an exemption from taxation. Code, § 81-101; 47 C. J. 56, § 30;

41 Am. Jur. 350, § 84. In other words, according to its usual signification, the term "lumber" would not ordinarily be classified as a farm product; and therefore, as to this lumber, it would be presumed prima facie that it was not such a product. In the circumstances, it was not sufficient to allege in mere general terms, as was done, that this lumber was a farm product and as such exempt from taxation. Conclusions based on specific allegations are to be disregarded on demurrer where the specific facts alleged either contradict or fail to support them. *Green* v. *Spears,* 181 *Ga.* 486 (182 S. E. 913); *Peavey* v. *Crawford,* 182 *Ga.* 782 (4) (187 S. E. 13, 107 A. L. R. 828); *Page* v. *Sansom,* 184 *Ga.* 623, 626 (4) (192 S. E. 203); *Smith* v. *Moore,* 186 *Ga.* 107 (197 S. E. 231); *Butler* v. *Dublin,* 191 *Ga.* 551, 555 (4) (13 S. E. 2d, 362); *Fowler* v. *Southern Airlines,* 192 *Ga.* 845 (4) (16 S. E. 2d, 897).

From what has been said, it is apparent that, whether we might hold as a matter of law, on the basis of judicial cognizance, that lumber is not a farm product within the meaning of the constitution, it is unnecessary in the instant case to go that far. It is enough to say that the petition here did not by the facts alleged show that this particular lumber was such a product.

Plaintiff cites authorities to the effect that statutes imposing taxes are to be construed strictly against the government and in favor of the citizen; but the question here is one of *exemption,* and it is the rule that all laws granting exemption from taxation must be strictly construed in favor of the State. *Standard Oil Co.* v. *State Revenue Commission,* 179 *Ga.* 371 (7) (176 S. E. 1); *Mundy* v. *Van Hoose,* 104 *Ga.* 292 (30 S. E. 783); *City of Columbus* v. *Muscogee Manufacturing Co.,* 165 *Ga.* 259 (1, 2) (140 S. E. 860).

In *Georgia Milk Producers Confederation* v. *Atlanta,* 185 *Ga.* 192 (194 S. E. 181), it was held that the act of 1921, supra, defining agricultural products as including "dairy products" had the effect of placing such products within the purview of the Code, §§ 5-603, 5-604, providing that no municipal corporation shall levy or assess any tax on any agricultural products raised in this State or the sale thereof until after three months from their introduction into such municipality. However, that decision did not construe or apply any provision of the constitution, and in conclusion it

was expressly stated: "This decision renders it unnecessary to determine whether, as contended, the accounts receivable for the dairy products were exempt in whole or in part, under the Code, § 92-201 or 92-1602. No question is raised as to the constitutionality of Code, §§ 5-603 and 5-604."

Since we have held that the allegations were insufficient to show that the lumber was a farm product, it is unnecessary to pass upon the question raised by the defendants as to when a farm product may lose its character as such through the process of manufacture. *Georgia Warehouse Co.* v. *Jolley,* 172 *Ga.* 172 (157 S. E. 276); Townsend *v.* Northern Crown Bank, 49 Canada 394; 25 Words & Phrases (Perm. ed.), 728. Nor do we determine whether, if the petition had shown that the lumber was a farm product, the plaintiff could be treated as a "producer," under the facts alleged.

■ A further question is whether the parts of the lumber situated in counties other than Cobb on the effective tax date of January 1, 1943, could be taxed in that county. The plaintiff relies upon the Code, § 92-6208, providing that all persons "conducting any business enterprise upon realty not taxable in the county in which such persons reside or the office of the company or corporation is located, shall return for taxation their stock of merchandise, raw materials, machinery, live stock, guano, commercial fertilizer, and all other personalty employed in the operation of such business enterprises, together with the manufactured goods and all other property of such business enterprises, and notes and accounts made and the money used in the prosecution of such business enterprises on hand at the time for the valuation of property for taxation, including all personalty of whatsoever kind connected with or used in such enterprises in any manner whatsoever, in the county in which is taxable the realty wherein such business enterprises are located or carried on." The plaintiff is a partnership, with its principal office in Cobb County, and with all of its members residing in that county. It does not appear that the plaintiff had any business enterprise anywhere except in Cobb County on the effective tax date. The petition alleged: "In every case, a sawmill was erected on each tract of land for the purpose of cutting and sawing the lumber growing on each respective tract, and each such mill was erected, managed, and operated by foremen, managers, and employees having and exercising in each respective

county the exclusive authority to cut and saw said timber and stack same on the premises and leave same stacked on the premises within the territorial limits of the respective counties where said timber had been produced. In this manner, all timber so stacked on the premises in each county was cut, sawed, held, and owned as property belonging to petitioner in each respective county on January 1, 1943." It thus appears that the plaintiff used a number of sawmills in sawing the timber on the various tracts, placing them temporarily for this one purpose, and for aught that appears, everything in the nature of a business enterprise had been moved on or before January 1, 1943. In *Joiner* v. *Pennington,* 143 *Ga.* 438 (85 S. E. 318), it was held that "a portable sawmill is not subject to taxation in a county where it is temporarily located on the land of another, the owner of the sawmill living in a different county and returning the same for taxation as personal property together with other property in the county of his residence." Personal property is ordinarily taxed in the county where the owner resides, and in order for it to acquire a situs for taxation in some other county, under the Code, § 92-6208, supra, it must be connected with some business enterprise that is situated more or less permanently in a different county, as distinguished from an enterprise whose location is not merely transitory or temporary. *O'Neal* v. *Whitley,* 177 *Ga.* 491 (170 S. E. 376); *Lewis & Holmes Motor Freight Corp.* v. *Atlanta,* 195 *Ga.* 810 (2) (25 S. E. 2d, 699). The petition did not allege sufficient facts to show that any of the lumber should be taxed elsewhere than in Cobb County; and since none of it was shown to be exempt from taxation as claimed, the petition did not state a cause of action for any relief, and the court erred in overruling the general demurrer of the defendants.

*Judgment reversed. All the Justices concur.*