41919. GEORGIA POWER COMPANY v. FLETCHER.

Submitted April 4, 1966—Decided April 29, 1966.

Richter & Birdsong, A. W. Birdsong, Jr., for appellant.

Wyatt & Wyatt, for appellee.

EBERHARDT, Judge. ■ We affirm. Headnote 1 needs no elaboration.

■ The sole question for decision is whether the lessee has breached the terms of his lease in placing 24 acres of the leased land in the Voluntary Cropland Adjustment Program of the United States Department of Agriculture. If he has, there can be no question that the lessor was entitled to cancel the lease and take possession. *Sinclair Refining Co. v. Davis,* 47 Ga. App. 601 (1) (171 SE 150) ; *Sinclair Refining Co. v. Giddens,* 54 Ga. App. 69 (6) (187 SE 201).

The lease was expressly for the purpose of "farming only" and so the question arises as to whether, when one who is engaged in the operation of a farm places a portion of his land in the feed grain crop adjustment program of the United States Department of Agriculture, he thereby ceases to farm it and devotes it to some other use.

Mr. Fletcher testified that he had leased this acreage from the Georgia Power Company and its predecessor in title since about 1928, and that the particular 24 acres which, for the year 1965, was in the feed grain program, had from time to time been planted to corn, cotton and other row crops and had more recently been planted to lespedeza and other pasturage grasses and devoted to cattle farming. However, the land was in the feed grain or crop adjustment program for soil conservation and erosion control, and since it is prohibited that any harvesting or grazing be done thereon from May 1 to November 1, he planned to use it as a winter pasture for his cattle. Since he was in cattle farming, as well as some row cropping, he had been planting a considerable amount of corn for feed, and the Government, seeking to limit the acreage to be devoted to growing corn by means of its feed program, prohibited the planting of corn on the land but permitted grasses and legumes if not grazed between the prohibited dates.

It is undisputed that the remainder of the leased acreage, save

the woodland, is devoted to the growing of various farm crops in the usual and customary manner.

What constitutes "farming purposes?" Perhaps the answer requires some consideration of what is "farming." It would seem that this term should be universally understood and need no clarification, for farming is as old as history. We read in Genesis 4:2 that "Abel was a keeper of sheep, but Cain was a tiller of the ground." Of course the concept isn't that simple any more, for there have been multitudinous changes and advancements in the way of earning one's living by wresting from old mother earth the things which man must have to provide food and raiment, along with other things. Even today, however, the general concept is that farming involves the cultivation of a considerable tract of land in the usual recognized ways of growing various kinds of crops. But, as in the days of Abel, it also includes the growing of livestock, or what may now be referred to as ranching. There are chickens, turkeys, swine, etc. A farmer may devote his acreage to a specialized use, such as the growing of vegetables of various kinds. It all comes within the orbit of the general concept. This court and the Supreme Court have struggled with the problem of what may constitute farming in several cases, though not in the particular area which we now consider. For example, it has been held that mineral water drawn from a farm well is not a farm product (*Pratt v. City of Macon,* 35 Ga. 583 (134 SE 191)); farming does not include turpentining (*Pridgen v. Murphy,* 44 Ga. App. 147 (160 SE 701), *Moody v. Tillman,* 45 Ga. App. 84 (163 SE 521), *Meadows v. Dixon,* 61 Ga. App. 697 (7 SE2d 329); however, these cases were overruled by statute and by *Hamilton Turpentine Co. v. Johnson,* 93 Ga. App. 544 (92 SE2d 235)); ditching land to render it cultivatable is a farming operation (*Culpepper v. White,* 52 Ga. App. 740 (184 SE 349)); cleaning out a farm well incident to the farming operation is farm labor, but not if done by a garage employee, (*Utica Mutual Ins. Co. v. Winters,* 77 Ga. App. 550 (48 SE2d 918)); a horse used to draw a dray may be a "farm horse," (*Kirksey v. Rowe,* 114 Ga. 893 (40 SE 990)); and there are many other cases in which some phase of farming is dealt with or discussed. More is to be found in *Collins v. Mills,* 198 Ga. 18

(30 SE2d 866), where both decisions and statutory provisions dealing with several aspects of farming are reviewed.

Without any doubt the growing of pasturage and hay for cattle raising is farming. Supervisor of Assessments v. Alsop, 232 Md. 188 (192 A2d 484); Winchel v. Nat. Fire Ins. Co., 129 Kan. 225 (282 P 571). "Farming purposes" is not limited to the cultivation of the soil and growing of crops ordinarily indigenous to the area; it includes stock raising and devoting of the land to pasturage. State v. Superior Court for Walla Walla County, 168 Wash. 142 (10 P2d 986). And so a provision in a lease of farm lands requiring that the lessee cultivate them in a farmer-like or workmanlike manner simply means that he shall use the lands as good farmers do. Even if specific things are mentioned in the lease, such as the growing of corn and other particular crops, he is not limited to that. Aughinbaugh v. Coppenheffer, 55 Pa. 347, 349.

The planting of leased lands to lespedeza or other grasses and legumes with a view of harvesting hay or of grazing cattle is unquestionably within the "farming purposes" requirement of this lease. Thus, the *use* to which the 24 acres of land was devoted is a farming use. Is the character of that use changed by the diversion of the 24 acres into the cropland adjustment program, so that it is no longer devoted to a farm use or a farm purpose?

The Agricultural Adjustment Act of 1938, following the Act of 1933, which the Supreme Court of the United States had declared unconstitutional (United States v. Butler, 297 U. S. 1 (56 SC 312, 80 LE 477, 102 ALR 914)), but which survived similar attack (Mulford v. Smith, 307 U. S. 38 (56 SC 648, 83 LE 1092)), including regulations for implementation of it (Usher v. U. S., 146 F2d 369; Weir v. U. S., 310 F2d 149), is in Title 7 of USCA, as are the several supplemental and amendatory Acts enlarging and implementing its purposes, including the Act authorizing crop adjustment programs. The purpose of these several related laws is stated in 7 USCA § 1282, where it is declared to be for the "conserving [of] national resources, preventing the wasteful use of soil fertility, and of preserving, maintaining and rebuilding the farm and ranch land resources in the

national public interest; to accomplish these purposes through the encouragement of soil-building and soil-conserving crops and practices . . ." Feed crops (and others, generally row crops), such as corn, have been determined to be soil-depleting, and thus the United States Department of Agriculture has, under these laws provided by the Congress, inaugurated a voluntary program whereby farmers might be encouraged to rebuild their soils and diminish the problems of erosion by taking corn and certain other soil depleting crops out or partially out of their program of cultivation, devoting the lands thus released to a planting of grasses and legumes or cover crops and refraining from harvesting therefrom or grazing thereon during the growing season between May 1 and November 1. For this they are paid a sum of money which the Department of Agriculture has determined to approximate the farmer's loss for so devoting his land. Any farmer, whether he be the owner, lessee, tenant or share-cropper, is eligible to participate in the program, and a great percentage of those who are engaged in farming do so each year. See 7 USCA § 1442, et seq.

As we have observed, these laws place great "emphasis on the problems incident to the proper use of soil and water. Conservation was and is at all times so fundamental that its necessity has been recognized by practically all thinking people who are familiar with the subject." Kincaid v. U. S., 96 FSupp. 468, 472. This idea of conservation of the land as a farming practice is not new. It will be recalled that under the Mosaic law the Hebrew was commanded to allow his crop lands and vineyards to lie fallow, taking no harvest from them, every seventh year. Leviticus 25:1-10.

Farmers generally have considered it economically wise and a sound practice to enter into the various conservation programs devised by the Government, by which there have been and are limitations of acreage to be devoted to particular crops, such as cotton, corn, peanuts, tobacco, and the like, thereby increasing soil fertility while diminishing erosion. We think it to be well within the "farming purposes" requirement of this lease.

■ The lessor makes the further contention that in placing the 24 acres into the crop adjustment program Mr. Fletcher has

subleased or sublet it to the Government without the prior written consent of the owner, as the lease requires, and that by reason of this violation and breach of the lease it is entitled to terminate the contract and have possession of the land.

"Subletting" is a leasing by the lessee of a whole or a part of the premises during a portion of the unexpired balance of his term. O'Neil v. A. F. Oys & Sons, 216 Minn. 391 (13 NW2d 8). Nothing in this record indicates that Mr. Fletcher has *leased* the 24 acres of land to the Government, for a leasing, even for less than a year, conveys to the lessee the "right to possess and enjoy the real estate," though it passes no estate out of the lessor. It gives to the lessee the usufruct for the specified term. *Code* § 61-101, and see *Code* § 85-806. Under the crop adjustment program the Government acquires no right to possession, no usufruct. It simply acquires the right to say to the farmer that *he shall use* his lands in a fashion determined to promote soil building and soil conservation. The Government neither "reaps nor sows." It does nothing in the way of taking over, or of taking possession. Whatever is done or to be done to the land must be done by the farmer himself. He retains full possession. He has the usufruct, but must use it for the betterment of the soil.

There was no subleasing or subletting, and hence no violation of that provision of this lease.

*Judgment affirmed. Bell, P. J., and Jordan, J., concur.*