## A06A0461. GILL v. PREHISTORIC PONDS, INC.
### (634 SE2d 769)

MIKELL, Judge.

We granted Louis Gill's application for discretionary appeal to determine whether an employee of an alligator farm is a "farm laborer" within the meaning of OCGA § 34-9-2 (a), which provides that the Workers' Compensation Act ("Act") shall not apply to "farm laborers" or their employers. We conclude that an alligator farm is not a "farm" as that term is used in the Act. Therefore, we reverse the judgment of the superior court.

> In the absence of legal error, the factual findings of the State Board of Workers' Compensation must be affirmed by the superior court and by the Court of Appeals when supported by any evidence in the administrative record. However, erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to the de novo standard of review.[1]

In the case at bar, the superior court reversed the award of the appellate division of the State Board of Workers' Compensation ("Board"), which had concluded that an alligator farm was not a "farm" as that term is used in OCGA § 34-9-2 (a). In so holding, the appellate division reversed the opposite conclusion reached by an administrative law judge ("ALJ"). Because "neither the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the Board,"[2] we set forth the relevant facts as found by the appellate division.

The employer/appellee, Prehistoric Ponds, Inc. ("Prehistoric"), is a corporation whose business is to "breed, feed, rear, grow out, and slaughter alligators." After the alligators are slaughtered, their meat, hides, and heads are sold. The appellate division found that the sale of hides constituted the majority of Prehistoric's business. Gill was employed by Prehistoric to clean out the pens in which the alligators

---

[1] (Citations and footnotes omitted.) *Trent Tube v. Hurston*, 261 Ga. App. 525 (583 SE2d 198) (2003).

[2] (Citation and punctuation omitted.) *Atlas Automotive v. Wilson*, 225 Ga. App. 631, 633 (1) (484 SE2d 669) (1997).

were kept, and he held that position at various times over a five-year period. On January 6, 2003, Gill's right thumb was bitten while he was cleaning out a pen. Gill developed a bone infection, or osteomyelitis, as well as salmonella. He was hospitalized for four days and missed one week of work. Prehistoric paid Gill's salary in lieu of compensation but disputed liability for certain medical bills.

The ALJ denied Gill's claim for workers' compensation benefits after concluding that Prehistoric operated a farm and that Gill was a "farm laborer" under OCGA § 34-9-2 (a), so that neither party was subject to the Act. The ALJ reasoned that because "farming" includes the raising, feeding, and care of livestock,[3] and Prehistoric raised, fed, and tended alligators for ultimate use or sale, then alligators should be equated with livestock for the purpose of coverage under the Act.

In reversing the ALJ's decision, the appellate division concluded that alligators could not be treated as "livestock" because they are defined as "game animals" in the Code. OCGA § 27-1-2, a game and fish provision, designates alligators as "game animals"[4] and defines "alligator farming" as "the possession, propagation, and any other act involved in the production of live alligators."[5] Alligator farms are regulated by the Department of Natural Resources.[6] The term "livestock," on the other hand, is defined as "all animals of the equine, bovine, or swine class, including goats, sheep, mules, horses, hogs, cattle, and other grazing animals, and all ratites, including . . . ostriches, emus, and rheas."[7] Livestock production is regulated by the Department of Agriculture.[8] Because alligators are "game animals" and not "livestock," the appellate division determined that Gill was not a "farm laborer" to whom OCGA § 34-9-2 (a) applied. The appellate division also relied on cases defining farming. In *Pridgen v. Murphy*,[9] for example, we held that " 'farming,' in its ordinary sense, signifies the cultivation of land for the production of agricultural crops, with incidental enterprises."[10] *Ga. Power Co.*[11] traced the history of farming to its Biblical inception and expanded the definition to ranching or raising livestock.[12]

---

[3] See *Ga. Power Co. v. Fletcher*, 113 Ga. App. 559, 562-563 (2) (148 SE2d 915) (1966).

[4] OCGA § 27-1-2 (34).

[5] OCGA § 27-1-2 (2).

[6] OCGA §§ 27-1-4; 27-1-6; 27-2-10.

[7] OCGA § 4-3-2 (1).

[8] OCGA § 4-4-2.

[9] 44 Ga. App. 147 (160 SE 701) (1931).

[10] Id.

[11] Supra.

[12] Id. at 562 (2).

Further, the appellate division cited as controlling precedent *Free v. McEver*,[13] in which this Court held that an employee who cared for cattle and hogs held for slaughter by a meat packer was not a "farm laborer" because his work was essential to the business of slaughtering, butchering, and processing the livestock and not to any "farming."[14] In applying *Free*, the appellate division reasoned that although Gill's work in cleaning out animal pens may have seemed agricultural, the work was essential to the business of harvesting animal hides, which is not agricultural, so Gill was not a "farm laborer" excluded from coverage under the Act.

Finally, the appellate division distinguished *Lumber City Egg Marketers v. Piercy*,[15] in which this Court held that in determining the "farm laborer" exemption, we must focus on the status of the employee, not the total activities of the employer, so that a worker who performs a nonfarming function may still be doing work incidental to farming and therefore be deemed a "farm laborer."[16]

In reversing the appellate division's award, the superior court held that its reliance on OCGA § 4-3-2 to define livestock was error; that its application of OCGA § 27-1-2 (34) to exclude alligators and to decide that the breeding and raising of alligators is a nonagricultural industry is contrary to law; that it failed to consider testimony that the employer also raised goats; and that it did not properly apply *Lumber City Egg Marketers* and *Free*. Gill enumerates each of these rulings as error.

1. We agree with Gill that the superior court erred in ruling that the appellate division should have credited testimony that Prehistoric raised goats in deciding the ultimate issue of whether Gill was a farm laborer. Neither the ALJ nor the appellate division chose to credit this testimony. Assessing the credibility of witnesses and weighing the evidence is the sole function of the ALJ and the appellate division,[17] and, as noted above, the superior court is not authorized to substitute itself for the Board as a factfinding body.[18]

2. Whether an alligator farm worker is a "farm laborer" pursuant to OCGA § 34-9-2 (a) is a matter of first impression. Gill argues that the superior court erred in concluding that Gill was a farm laborer, relying on the concept of "farm labor" as historically developed in precedents. "[F]arm labor includes all direct and incidental activities

---

[13] 79 Ga. App. 831 (54 SE2d 372) (1949).
[14] Id. at 834 (1).
[15] 217 Ga. App. 584 (458 SE2d 364) (1995).
[16] Id. at 585.
[17] See OCGA § 34-9-103 (a); *Bankhead Enterprises v. Beavers*, 267 Ga. 506, 507 (480 SE2d 840) (1997).
[18] *Atlas Automotive*, supra.

involving the cultivation of agricultural crops and the growing, feeding and management of livestock, chickens, turkeys, swine, etc."[19] "It is well established that all enactments are to be construed in connection and in harmony with the existing law; and that their meaning and effect will be determined in connection, not only with the common law . . . , but also with reference to other statutes and the decisions of the courts."[20] Thus, we construe OCGA § 34-9-2 (a) with reference to the decisions. But none of the cases dealt with farming wildlife, in general, or alligators in particular. Thus, we also construe the provision with reference to other statutes. Because the Act does not define "farm laborer," we look elsewhere in the Code to supply a meaning.

> Generally we give words their ordinary signification, except that we construe words of art or words connected with a particular trade or subject matter according to their meaning within that subject matter or trade. " 'It is an elementary rule of statutory construction that a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together.' "[21]

Title 34, Chapter 8, known as the Employment Security Law ("ESL"),[22] includes service performed by an individual in "agricultural labor" within its definition of "employment."[23] "Agricultural labor" is, in turn, defined as "service on a farm . . . in connection with cultivating the soil or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, fur-bearing animals, *and wildlife*."[24] Finally, the ESL states that "farm" includes "farms used for production of stock, dairy products, poultry, fruit, and fur-bearing animals; and . . . [t]ruck farms, plantations, ranches, nurseries, ranges, greenhouses, orchards, or other similar structures or tracts used primarily for the

---

[19] (Citation and punctuation omitted.) *J & C Poultry v. Reyes-Guzman*, 227 Ga. App. 731, 732 (489 SE2d 853) (1997). See also *Oft v. Sims*, 142 Ga. App. 9 (235 SE2d 41) (1977); *Ga. Power Co.*, supra; *Pridgen*, supra.

[20] (Citation and punctuation omitted.) *Atlanta Journal &c. v. Sims*, 200 Ga. App. 236, 237 (407 SE2d 464) (1991).

[21] (Footnote omitted.) *Mathis v. Cannon*, 276 Ga. 16, 26 (4) (573 SE2d 376) (2002).

[22] OCGA § 34-8-1.

[23] OCGA § 34-8-35 (m) (1).

[24] (Emphasis supplied.) OCGA § 34-8-35 (m) (2) (A). "Wildlife" is defined in OCGA § 27-1-2 (77) as "any vertebrate or invertebrate animal . . . and includes . . . reptiles."

raising of agricultural or horticultural commodities."[25] Thus, in the ESL, the legislature included the raising and management of wildlife in its definition of "agricultural labor" but excluded it from the definition of "farm." This juxtaposition invites the application of two well-known principles of statutory construction: *expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)."[26] We conclude that in the ESL, the legislature meant that individuals who raise or tend wildlife perform "agricultural labor," but only when they do so on a "farm," which is "used for production of stock, dairy products, poultry, fruit, and fur-bearing animals."

Because the Act and the ESL are both contained within Title 34, and because our interpretation of the ESL comports with the long-standing meaning of "farming" as developed in the decisions, we apply the ESL's definition to interpret "farm laborer" under the Act. Accordingly, we conclude that when Gill cleaned out the alligator pens, he was caring for wildlife and thus performing "agricultural labor."[27] However, his employer, an alligator farm, was not a "farm" because alligators are "wildlife," not "[live]stock . . . [or] fur-bearing animals."[28] Therefore, the employer did not fall within the exemption provided by OCGA § 34-9-2 (a). The superior court erred in concluding otherwise.

3. Gill's remaining enumerated errors are rendered moot by our decision in Divisions 1 and 2.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 8, 2006 —
RECONSIDERATION DENIED JULY 25, 2006 — ▮▮▮▮▮▮▮▮

*Farrar & Hennesy, Douglass K. Farrar*, for appellant.
*Chad R. Corlee*, for appellee.

---

[25] OCGA § 34-8-35 (m) (3) (A), (B). "Agricultural commodities" are defined in OCGA § 2-8-11 (2).

[26] (Footnote omitted; emphasis in original.) *Hammock v. State*, 277 Ga. 612, 615 (3) (592 SE2d 415) (2004).

[27] See OCGA § 34-8-35 (m) (2) (A).

[28] OCGA § 34-8-35 (m) (3) (A). See also *Free*, supra.