514

## Liquid Fuels Tax Refund

KEITEL, Deputy Attorney General, January 9, 1950.
—We have your request to be advised concerning the
interpretation of the Act of May 26, 1949, P. L. 1880,
which amends section 17 of The Liquid Fuels Tax Act
of May 21, 1931, P. L. 149, 72 PS §2611q.

The act of 1949 provides in part as follows:

"Any person who shall use or buy liquid fuels on which the tax imposed by this act shall have been paid and shall consume the same in the operation of any nonlicensed farm tractor or licensed farm tractor when used off the highways for agricultural purposes or *nonlicensed powered farm machinery for purposes relating to the actual production of farm products shall be reimbursed one-half the amount of such tax.*" (Italics supplied.)

Being in the nature of an exemption, these reimbursement provisions must be construed strictly against the person seeking the benefits thereof: Section 58(5) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558.

In order to answer your inquiries, it will be necessary to construe the meaning of the terms "tractor" and "powered farm machinery", since those terms are not defined in the act. The act further qualifies those terms with the words "licensed" or "nonlicensed", apparently referring to the registration requirements of the self-propelled vehicles contained in The Vehicle Code and The Tractor Code.

"Motor vehicles" are defined in The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §2, as "Every vehicle . . . which is self-propelled, except tractors . . . agricultural machinery . . ." "Tractor" is defined in the same section as "Every vehicle of the tractor type, as defined in The Tractor Code". The Vehicle Code contains no definition of agricultural machinery.

Section 401 of The Vehicle Code, 75 PS §91, provides that motor vehicles determined by the Department of Revenue "to be used exclusively . . . upon the farm or farms" owned or operated by the owner of the vehicle are exempt from registration.

Turning to The Tractor Code of May 1, 1929, P. L. 1005, we find in section 102, as amended by the Act of

May 18, 1949, P. L. 1456, 75 PS §862, that a "tractor" is:

"Every vehicle of the tractor type which is self-propelled, originally constructed under a distinctive name, make, model or type, by a generally recognized manufacturer, excepting road rollers, ditch diggers, or vehicles used exclusively upon stationary rails or tracks. *In the case of motor vehicles, as defined in the Vehicle Code, which cannot be used as motor vehicles, the secretary may determine in each case whether or not such motor vehicle is of the tractor type,* and in making such determination the secretary shall consider the purpose for which such motor vehicle shall be used." (Italics supplied.)

"Farm Tractor" is defined by the 1949 amendment to The Tractor Code as:

"Every vehicle of the tractor type which is self-propelled, designed and used primarily as a farm implement for drawing plows, mowing machines and other implements of husbandry."

Section 201 of The Tractor Code, 75 PS §891, exempts from the registration requirement those tractors which are

". . . used exclusively by any person upon the farm or farms he owns or operates, or upon highways, connecting by a direct route, any farms or portions of farms under the ownership or operation of such person, to any other farm or to any garage for the purpose of having the same repaired, . . ."

These provisions of The Vehicle Code and The Tractor Code exempt both motor vehicles and tractors, respectively, from registration if used exclusively in farming. The registration requirements for motor vehicles and tractors are mutually exclusive.

As noted, supra, the Act of 1949 refers to tractors and powered farm machinery, but contains no express reference to motor vehicles. Since a motor vehicle is

not embraced within the term "tractor", it cannot be included within the scope of the Act of 1949 unless it is construed to be "powered farm machinery".

According to section 33 of the Statutory Construction Act, supra, 46 PS §533, "Words and phrases shall be construed . . . according to their common and approved usage . . .". Judicial opinions have expressed this same rule in various ways, e.g., "statutes are presumed to employ words in their popular sense"; such words must be given their "common or popular meaning", or be interpreted "as the ordinary man would understand them".

Thus, the terms "powered farm machinery" must be construed in their common and ordinary meanings. "Powered" means equipped with, or capable of operating with, power, presumably power furnished by gasoline motor. "Powered" is broader than "self-propelled", and would not necessarily require that the gasoline motor be an integral part of the machinery so long as it furnishes the power therefor. The machinery could obtain its power from a stationary or a portable gasoline engine as well as from a self-contained motor.

In Voorhees v. Patterson, 20 Kan. 555, 556 (1878), it was held that a McCormick reaper was a "farm utensil"; and a hay-baler and a silo-filler were held to be "farm machinery" in Lewis v. Insurance Company of North America, 203 Wis. 324, 327, 234 N. W. 499, 500 (1931). In West v. Springfield F. & M. Ins. Co., 104 Kan. 157, 178 Pac. 423 (1919), it was held that a corn shredding machine operated by a gasoline engine was within the term "gasoline and steam power machinery". The term "farm machinery" is further restricted in the act to such as is used "in the actual production of farm products". In common parlance, this would clearly include reapers, harvesters, hay-balers, corn shredders, silo-fillers, and other machinery of a similar nature.

You first inquire as to whether a nonlicensed automobile, truck or jeep used exclusively on a farm for the transportation of fertilizer, crops, etc., may be considered as powered farm machinery. The mere fact that such equipment, if used on a public highway, would be required to be registered under The Vehicle Code does not prevent it from being construed as powered farm machinery. In our opinion, such a nonlicensed motor vehicle can be construed as powered machinery.

Accordingly, you are advised that a nonlicensed automobile, truck or jeep used exclusively on a farm for the transportation of fertilizer and crops, etc., is within the reimbursement provisions of the Act of 1949.

You next inquired as to whether gasoline consumed by a sprayer mounted on a licensed truck which furnishes power to the sprayer is reimbursable under this section. You state that the owner of such a truck is engaged in the business of spraying trees for various farms.

Under the provisions of The Tractor Code, the Secretary of Revenue must determine whether a motor vehicle "which cannot be used as a motor vehicle" is "of the tractor type". If the secretary concludes that this is a tractor, then it would be within the reimbursement provisions of the Act of 1949. On the other hand, if the truck is deemed to be a licensed motor vehicle and not a tractor, the gasoline used therein would not be reimbursable even when used for agricultural purposes.

The act does not require that the person using the gasoline for agricultural purposes be the owner or operator of the farm on which it is used. For that reason the reimbursement provisions apparently apply to an independent contractor as well as to the farmer.

You further inquire as to whether the tax paid on gasoline consumed in furnishing power for a saw mill and other equipment used in cutting down trees

and preparing lumber for market is reimbursable under this amendment. This raises the question of whether lumber is a "farm product".

In Commonwealth v. Carmalt, 2 Binney 235, 237, 238 (1810), in considering the meaning of the word "farm", the court said:

"By a farm we mean an indefinite quantity of land, some of which is cultivated. Most farms contain parcels of land applied to different purposes. Some are used for the cultivation of grass, some of grain, *and some remain in wood. It is very common for the proprietors of farms to have a piece of wood land, not contiguous to the place of their residence, but appurtenant to it.* . . . (Italics supplied.)

In Marple Township v. Lynam et al., 151 Pa. Superior Ct. 288, 292 (1943), it was held that a nursery where ornamental and other trees and shrubs were grown was a "farm" within the permitted use of a township zoning ordinance. The court said:

"The lower court found that 'the popular connotation of a "farm" is a place of several acres where the owner or tenant resides, a substantial portion of which is devoted to the raising of crops, such as wheat, oats, hay, etc., and some vegetables, such as corn and beans, and generally accompanied by the breeding of certain animals such as pigs, cows, chickens, etc., the principal use of the produce being to maintain the farmer and his family and only the excess being sold'. Obviously defendants' contemplated use does not come within that definition and the injunction was granted on that ground.

"We cannot agree that the township, in the ordinance in question used the word 'farm' in that sense. *But even a farm of that class has its woodlot and if, for example, locust trees are propagated and grown for sale as fence posts or evergreens as Christmas trees, it is still a farm.*" (Italics supplied.)

Contra, Collins et al. v. Mills et al., 198 Ga. 18, 30 S. E. (2d) 866, 870 (1944).

The foregoing authorities in Pennsylvania indicate that the trees cultivated on a farm and sold are farm products.

In Ammon et al. v. Bowles, admr. OPA, 154 F. (2d) 698 (C. C. A. 8th, 1946), the court decided that portable gasoline engines, the principal ultimate use of which was a source of power to operate various mechanical devices on farms, were "farm equipment" within a maximum Federal price regulation relating to "mechanical equipment . . . used primarily in connection with the production and farm processing for market and farm use of agricultural products . . .". Thus, a saw used to prepare such trees for sale or use is functioning as farm machinery; and when it is powered by a gasoline engine, it is powered farm machinery engaged in the actual production of farm products within the meaning of the Act of 1949.

You next inquire as to whether the tax paid on gasoline consumed in a lighting system for the purpose of lighting barns and other farm buildings as well as the farmer's home may be reimbursed under this section.

The fact that the gasoline motor furnishes mechanical power to a generator, which in turn furnishes electric power for certain farm machinery, would not prevent the application of the reimbursement provisions.

The use of the electricity produced by the lighting system would determine whether the gasoline was used in "powered farm machinery" for "the actual production of farm products". For example, electric power used in operating a milking machine would meet the reimbursement requirements, whereas power furnished to light the home would not meet such requirements.

Accordingly, reimbursements should be permitted for tax paid on gasoline consumed in a lighting system only for the proportion of gasoline corresponding to the ratio between the amount of electric current used in powered farm machinery for the actual production of farm products and the total amount used for all purposes.

You also ask whether a person is entitled to reimbursement of tax paid on liquid fuels consumed by a licensed combine or corn harvester which is self-propelled. You state that some farmers in Pennsylvania own licensed combines and corn harvesters which are self-propelled while others own nonlicensed combines and corn harvesters which are drawn by tractors.

A self-propelled combine or corn harvester could be "licensed" only under the provisions of The Tractor Code, supra. It would necessarily be a "tractor" within the definition of that code, and the reimbursement provisions of the Act of 1949 relative to "licensed tractors" would apply to such licensed combines or corn harvesters, which are self-propelled.

As to a combine and corn harvester drawn by a tractor, the reimbursement provisions of the Act of 1949 would apply to the tractor, whether licensed or nonlicensed.

Finally, you inquire as to the correct interpretation of the requirement in the Act of 1949, that "every claim [for reimbursement] shall be accompanied by receipts indicating that the liquid fuels tax was paid on the liquid fuels for which reimbursements are claimed". A question arises where the farmer purchases the gasoline, together with other equipment and supplies, from a coöperative association or another firm on credit, paying for all purchases periodically or on an installment basis. Thus he would not be able to submit with his claim for reimbursement an individual receipt for

the gasoline purchased showing the tax paid by him thereon.

In our opinion, it would be sufficient compliance with the act for the farmer to furnish you with the current delivery slips for his liquid fuels, showing the amount of Pennsylvania tax payable thereon, because the tax in every instance would have been paid to the Commonwealth by the licensed distributor prior to the time of its purchase by the farmer.

Our conclusions in this opinion may be summarized as follows and you are advised in accordance therewith:

1. A nonlicensed motor vehicle used exclusively on a farm in the production of farm products is "powered farm machinery" within the reimbursement provisions of the Act of 1949.

2. If the Secretary of Revenue determines that a motor vehicle which cannot be used as a motor vehicle is a tractor, the tax paid on gasoline consumed by it in furnishing power to a sprayer mounted thereon, would be reimbursable.

3. The person seeking reimbursement of liquid fuels tax is not required to be the owner or operator of the farm on which the liquid fuels was used, so long as it was used for requisite agricultural purposes.

4. Tax paid on gasoline consumed in furnishing power for a saw mill is reimbursable when done in connection with the operation of a farm.

5. Tax paid on gasoline consumed in a lighting system may be reimbursed only in proportion to the amount of electric current used in operating powered farm machinery.

6. The tax on all liquid fuels consumed in the operation of licensed or nonlicensed combines and harvesters while engaged in the actual production of farm products is reimbursable.

7. The Board of Finance and Revenue has authority to accept current delivery slips of liquid fuels in sup-

port of claims for reimbursements, where the purchaser does not pay cash for liquid fuels when purchased, and cannot furnish receipts indicating that the liquid fuels tax was paid by him.