ANDERSON *v.* BLACK *et al.*

628

No. 13455.   February 12, 1941.   Rehearing denied March 19, 1941.

630

*Kelley & Brannon, W. S. Gaillard,* and *A. W. Vandiviere,* for plaintiff.

*Wheeler & Kenyon, Boyd Sloan* and *Charles J. Thurmond,* for defendants.

REID, Chief Justice. ■ The first question to be considered is whether the court erred in overruling the plaintiff's demurrer to Black's intervention, and in refusing the motion to dismiss it. The demurrer attacked the intervention on the grounds: (1) that the court was without jurisdiction to determine the controversy as it was presented by the intervention, and could grant no relief against Anderson in Black's behalf, since Anderson was a resident of Dawson County, and the land in question was located in that county; (2) that Black by his pleadings sought ejectment of Anderson without showing his right to do so by setting out his abstract of title; (3) that when Lyle was eliminated from the case, which it was contended virtually resulted from Black's pleading, there was no longer any equity in the case; (4) that Black's claim to ownership of the quarry and land on which it was situated was not properly shown, because of insufficiency of its description, and that character of his possession was insufficiently alleged; (5) that the relief sought was not germane to the original action; (6) that the intervention as amended related to and set up Black's claim to other land in addition to that claimed by Anderson in his suit, and therefore stated a new cause of action. Lyle had answered that he derived from Black his right to remove stone from the land under a contract, and upon the court's process had

called upon him to defend the action. Black's intervention simply presented a claim to the money due by Lyle, which he sought to sustain by showing that the property where the quarry was located belonged to him, and therefore that he had a legal right to contract with Lyle for the sale of the stone. In defense of the plaintiff's action in Lyle's behalf under stipulation agreed to by all the parties, he denied that the plaintiff owned the land, and sought injunction to prevent the plaintiff from interfering with his possession. It seems clear to us that the court had jurisdiction to determine the controversy. It had jurisdiction of the action originally, in which the plaintiff sought damages and injunction against continuing trespass against the local defendant. Substitution of the money for Lyle's liability, and Black's presence in the case to defend, did not change the nature of plaintiff's case. He still sought the money upon which judgment of the court would operate, and still sought protection of his property against trespass. Black sought the money and injunction to protect against trespass.

If an action be one for trespass to realty, and not one to recover possession of the land, ownership of the land is only incidentally involved, and the fact that the land may be situated in another county will not deny jurisdiction to determine the main controversy, even though it depends upon the contested ownership of the realty. See *Huxford* v. *Southern Pine Co.*, 124 *Ga.* 181 (5) (52 S. E. 439), where it was ruled: "In actions for trespass to realty, ownership of the premises is incidentally involved; and while in such cases a special finding by the jury as to ownership is not required, the incorporation of such a finding into the verdict will not vitiate it, if the verdict is in other particulars regular and proper." In the opinion Justice Cobb further stated: "If the purpose of the suit were to recover possession of the land, of course the superior court of Coffee County [the land being in another county] would have no jurisdiction. Such was not the object to be attained by the judgment prayed. It was simply to restrain the defendant from doing acts prejudicial to the rights of the plaintiffs, one of whom claimed to be the owner of the land. The title to the property was incidentally and collaterally involved, but it was not such a suit respecting title to land as under the constitution is required to be brought in the county where the land lies. It was incumbent upon the plaintiffs to show that they had

such an interest in the property as a court of equity would protect, and they showed this interest by showing a complete chain of title. While it was not necessary for the jury to specifically find that the property belonged to the plaintiff, it was necessary that the jury, before they could find in favor of a permanent injunction, should believe that ownership in the plaintiff was established. The insertion in the verdict of the finding as to ownership would not vitiate the verdict." Said to be the favorite maxim of equity is that embodied in the Code, § 37-105: "Equity seeks always to do complete justice; and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject-matter of the suit, provided the court has jurisdiction for that purpose." In *Bishop* v. *Brown,* 138 *Ga.* 771 (76 S. E. 89), it was held that "Ancillary proceedings may be filed in cases growing out, and in aid, of the original proceedings, in the same court and between the same parties, for the purpose of rendering complete justice among all the parties at interest." A plaintiff who institutes a suit in a county other than that of his residence, for all the purposes of the defense of that suit, submits himself to the jurisdiction of the courts of that county. *Moore* v. *Medlock,* 101 *Ga.* 94 (28 S. E. 836) ; *Gordy* v. *Levinson,* 157 *Ga.* 670 (122 S. E. 234). In *Sexton* v. *MacDougald Construction Co.,* 176 *Ga.* 468 (168 S. E. 32), the decision of *Caswell* v. *Bunch,* 77 *Ga.* 504, was quoted from, to explain the principles underlying this rule, by showing that it is based upon "the idea that the plaintiff by voluntarily instituting his suit gives the superior court of the county where it is so instituted jurisdiction of his person sufficient to answer all the ends of justice respecting the suit originally instituted,—such proceedings in equity being ancillary to or defensive of the pending suit." Under these principles of law we are of the opinion that the court had jurisdiction, that the case proceeded properly as one in equity to do complete justice, that the relief sought was not in ejectment, and that it was germane to the original action.

Likewise we think the claim that Black, in asserting his ownership of the property, did not sufficiently describe it, and that his possession was not sufficiently shown, is without merit. He denied the plaintiff's claim to the property, alleging ownership in himself, and set up that he "was the owner and in possession of all that part of land lot 417 in the 13th district and first section of Daw-

son County, Georgia, lying on the opposite side of the creek from what is known as Black's mill, and beginning at a point below said mill near what is known as the Carder near the ford of the stream where a road at one time crossed and at a corner marked by a fence many years ago, and running thence along the fence row and line up the hill in the direction of what is known as the Virgil Smith property to a point near the crest of the bluff or hill where the fence made a left turn; thence along the old fence line to the road where the fence thence turned back toward the creek and ran to the mill, just below a bridge, but nevertheless the line at this point continued across this road to another fence; thence up this fence to the creek; thence down the creek to the beginning corner." There were other appropriate allegations as to his acquisition and possession of the property, sufficient to support his claim based on prescription, if not also on record title. Nor do we think his claim as made in the amended intervention presented a new cause of action. The allegations properly construed simply brought in issue the question of who was entitled to the money due by Lyle (and paid into court), and which of the parties was entitled to protection as against the other for trespass. This is true even though in asserting his ownership of the property a larger tract may have been described. Thus, so far as the demurrer is concerned, we find no error in the judgment overruling it. The motion to dismiss was filed at a later stage of the case, and contains some grounds common to the demurrer, and already disposed of in what is said above. The other grounds related to evidence and to matters arising upon the trial of the case, and could not be considered on the test as to the sufficiency of the intervention.

■ In ground 4 of the motion for new trial complaint is made of the charge of the court, to the effect that adjacent landowners may be in constructive possession of the same land, in which case no prescription would arise in favor of either. The contention is that the description in Anderson's deed, "including all that part of said lot on the west side of the creek," was such as to give him the right to contend for constructive possession, and that the deeds of Black, the adjacent owner, describing the land as "that part of lot 417 upon which is situated the mill known as Black's mill and containing about ten acres and including all the mill's machinery, right of way, water power, etc., of which the said Jas.

634

M. Black late of said county, now deceased, died seized and possessed," was insufficient to fix a boundary that would authorize Black to claim constructive possession, and therefore that the giving of the charge, contended by reason of the above to be inapplicable, deprived Anderson of his right of prescription. While counsel for defendant contend that Anderson did not claim by prescription in his pleadings but based his claim solely on his paper title, we think upon a proper construction of the descriptions contained in the deeds, as aided by the evidence, the conclusion could have been reached that both deeds embraced the property in controversy, and that accordingly the charge given was not inapplicable to the issues. It appears from an examination of the deeds, plats, and record of oral testimony that the jury was authorized to find in favor of either party in respect to what was intended to be conveyed in the respective deeds, all of which were ambiguous as to the boundaries intended to be fixed. The language "including all of said lot lying on the west side of the creek," with the exceptions noted, in Anderson's deed was inconsistent with the other boundaries described, and rendered doubtful the question of its conveyance. Black's deed in its conveyance of the Black mill site consisting of a tract of "about ten acres," and of which the ancestor was in possession at the time of his death, was subject to explanation. The case seems to have been determined on the conflicting proof on these questions as well as those elsewhere herein considered, and the charge as to prescription in the case of constructive possession is not open to the complaint made. Anderson's claim was that his deeds conveyed all the property on the west side of the creek (which would include the land in controversy) and made the creek the line, and that the defendant's deed did not conflict with this. If that contention be accepted and the description in Anderson's deed be considered clear, unambiguous, and sufficient for that purpose, he being the first grantee from a common grantor, his claim would be established under his title without reliance upon prescription, under the principle properly given in charge in another context, as contained in the Code, § 85-405 (*Johnson* v. *Simerly*, 90 *Ga.* 612, 16 S. E. 951), that one's possession "under a duly recorded deed will be construed to extend to all contiguous property embraced therein," unless there was sufficient evidence to support a claim by

Black of independent, adverse, actual possession of the property in question by him. So it does not appear that the charge worked any injury to the plaintiff. As to the other objection, that a deed introduced in Black's behalf from certain heirs at law of N. D. Black, conveying to him all of lot 417, had not been recorded and could not be the basis of any color of title under which Black might claim prescription, the charge clearly was not based on this deed, and we think could not have been so understood by the jury, since the charge was necessarily related to boundaries within that lot and not around it.

■ Ground 5 of the motion for new trial complains that the charge given by the court on the law governing acquiescence in a line by coterminous landowners (Code, § 85-1602) was not authorized by the evidence. This objection is predicated on the contention that Anderson's deeds were clear and certain in their description as including the portion in dispute, and that it was equally clear that Black's deeds did not include it; that thus there was nothing to show an uncertain or unascertained or disputed line. Nothing is said in this ground about possession, except as related to the deeds. There was proof from many witnesses that as respects the quarry site it was located in what for many years was used as a hog lot, that there was a fence around it connecting it with the mill site conveyed to Black, and that Black's predecessors in title, his grandfather and father, had occupied and used it in connection with the mill and its operation, that they had declared it to be theirs, had so treated it, and that Virgil Smith and his wife, predecessors of Anderson (and grantees under James M. Black) had acquiesced in its use up to the fence (which is now destroyed but the line and location of which is discernible), had stated to others that it was Mr. James M. or N. D. Black's property and not theirs, and (in effect) that they owned that adjoining. Around this question the main controversy in the case seemed to turn. There was voluminous proof on both sides, declaratory and explanatory. The Code, § 85-1602, declares: "General reputation in the neighborhood shall be evidence as to ancient landmarks of more than 30 years' standing; and acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." Much of the proof in this connection related to recognition of the line by declarations, etc., as pro-

vided in the Code, and also to possession up to the line. The charge was altogether appropriate to the issues, and no criticism is made as to its correctness.

■ Ground 6 complains of the admission in evidence of a deed from Mrs. N. D. Black, Lula Jones, and Dessie Otwell to defendant John D. Black, conveying several land lots including "lots 417 and 424" (the ones claimed by Anderson), dated in 1933 and not recorded until after the filing of the suit now involved. The objection was that there could be no presumption of possession under it, because it was unrecorded during the period possession was claimed, and that the jury might have given it this effect. Of course, ordinarily, "A registered deed shall be admitted in evidence in any court without further proof." Code, § 29-415. In the present situation we do not see that this deed was any aid to the defendant's case, or harm to the plaintiff. It included in the terms of its description all of lot 417. The defendant claimed only a part of this lot. There was nothing in the description that had any relation to the real controversy in so far as ownership of the land was concerned to wit: the line between the parties within lot 417. The charge of the court gave no effect to this deed. What the controversy was about was clearly understood, and we think that this deed did no harm.

■ Grounds 7 to 15, inclusive, deal with evidence alleged to have been improperly or unlawfully admitted against various objections. While these questions might be treated in detail, they really depend upon principles elsewhere ruled upon. They are dealt with together in the brief for the plaintiff, and will be so treated here. The admissibility of testimony of witnesses regarding possession, for instance, is controlled by the rulings already made on construction of the deeds as related to certainty or adequacy of description. As against objections that there was no sufficient basis in the deeds for claim under color of title, witnesses were permitted to testify regarding the area of land embraced in the mill site conveyed to Black; as against the objection that no sufficient agreement as to dividing line between coterminous landowners was shown, they were permitted to testify as to declarations by predecessors in title of both claimants, the one in favor of and the other in disparagement of his title in respect of the particular property and in relation to the line observed. Under the rulings already made, this evidence

was admissible and was pertinent to the issues. This is true also of the deeds admitted in evidence. Code, § 38-308. The objections, in so far as they relate to evidence as hearsay or as conclusions, have been carefully and painstakingly examined, and are considered to be without merit as stated in either of these grounds.

■ Ground 16 complains that the court erred in failing, without request, to charge the principle of law contained in the Code, § 38-114, with reference to estoppel arising from recital in deed as against grantor and his privies in estate, in blood, and in law. This insistence is upon the theory that Black's possession and that of his predecessor was permissive, since the common grantor James Black had first conveyed the particular land to Anderson, and his remaining in possession of any part so conveyed would amount to no more than possession of that character, and thus there could be no prescription as against James M. Black's grantee. For this proposition *Johnson* v. *Hume,* 163 *Ga.* 867 (137 S. E. 56), is relied on. On this question the judge charged the jury: "Permissive possession can not be the foundation of a prescription until an adverse claim and actual notice to the other party. . . I charge you that if you believe from the evidence in this case, oral and documentary, that James M. Black conveyed by deed all of the land in lot 417 on the west side of the creek, and if you further believe from the evidence that James M. Black, the grantor in said deed, remained in possession of that part of the land on which the rock quarry in question is located, on the west side of said creek, then in that event I charge you that the possession of that part of the land lying west of the creek being retained by the said James M. Black, the grantor, would be the possession of his grantee, Virgil R. Smith, and under such possession the said James M. Black could not acquire any prescriptive title thereto as against Virgil R. Smith or his successors in title. I further charge you that if you believe from all the evidence in the case that James M. Black was in possession of that portion of lot 417 on the west side of said creek after he had deeded the same to his grantee, Smith, as I have just stated to you, then and in that event I charge you that such possession would be a permissible possession thereof, and could not be the foundation of a prescription against the said Virgil R. Smith or his successors in title, until the said James M. Black made an adverse claim thereto, and actual notice

was brought home to the other party." There is no criticism of this charge as to its correctness or sufficiency. In the absence of a request for a more elaborate statement of the principle, we see no error and are of the opinion that the principle governing the plaintiff's contention was fairly presented.

■ It is contended in ground 17 that the court erred in failing, without request, to charge the law in respect to easements acquired with the right to overflow or back water over land. This objection is without merit. It is argued that under the evidence the jury might have believed the boundary extended by the widening of the creek as the result of constructing a dam; but no such contention was made. There is no suggestion that the creek overflowed the property in dispute, and no claim is made by reason of it.

■ While the evidence on the question of possession and acquiescence in dividing line, as upon all issues, was in sharp conflict, we hold, as our previous rulings indicate, that it was sufficient to support the verdict, the second rendered in Black's favor. No point is made as to the scope of the decree as entered. If in decreeing Black entitled to possession of the land involved, it undertook to give more relief than authorized, the verdict, as pointed out in the *Huxford* case, supra, will not on that account be vitiated. The judge did not err in overruling the demurrers and the motion for new trial. *Judgment affirmed. All the Justices concur.*