FRASER *v.* DOLVIN *et al.*

No. 15202.   JULY 3, 1945.   ADHERED TO ON REHEARING JULY 23, 1945.

*Hooper, Miller & Head* and *Mitchell & Mitchell,* for plaintiff.

*Julius McCurdy, Clarke & Clarke,* and *George B. Tidwell,* for defendants.

DUCKWORTH, Justice. "Possession to be the foundation of a prescription must be in the right of the possessor, and not of another; must not have originated in fraud; must be public, continuous, exclusive, uninterrupted and peaceable, and be accompanied by a claim of right. Code, § 85-402. Color of title is a writing, upon its face professing to pass title, but which does not do it, either from a want of title in the person making it, or from the defective conveyance that is used—a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law." *Beverly* v. *Burke,* 9 *Ga.* 440 (54 Am. D. 351) ; *Street*

v. *Collier,* 118 *Ga.* 470, 472 (45 S. E. 294). Adverse possession of lands, under written evidence of title, for seven years, shall give a good title by prescription against everyone, except the State or persons laboring under disabilities; but if such written title is fraudulent, and notice thereof is brought home to the claimant before or at the time of the commencement of his possession, no prescription shall be based thereon. Code, §§ 85-406, 85-407. "Fraud which will prevent possession of property from being the foundation of prescription must be actual or positive fraud, and actual fraud can not be founded on presumptive notice, or that sort of notice which is based on record, or which is presumed from want of diligence." *Mohr* v. *Dubberly,* 165 *Ga.* 309 (140 S. E. 856) ; *Graham* v. *Lanier,* 179 *Ga.* 744, 745 (2) (177 S. E. 574). The fraud contemplated by the law is such as would affect the conscience of the claimant with bad faith and moral turpitude. *Brady* v. *Walters,* 55 *Ga.* 25 (3) ; *Shingler* v. *Bailey,* 135 *Ga.* 666, 668 (70 S. E. 563) ; *Kelley* v. *Tucker,* 175 *Ga.* 796 (166 S. E. 187) ; *Graham* v. *Lanier,* supra, "Good faith, as contemplated by the law of prescription under color of title, has relation to the actual existing state of the mind, whether so from ignorance, scepticism, sophistry, delusion or imbecility, and without regard to what it should be from given legal standards of law or reason." *Lee* v. *O'Quin,* 103 *Ga.* 355, 365 (30 S. E. 356). Direct evidence of bona fides is not required. A presumption of good faith arises from adverse possession. *Baxley* v. *Baxley,* 117 *Ga.* 60 (4) (43 S. E. 436) ; *Canady* v. *Flanders,* 151 *Ga.* 531, 533 (107 S. E. 533). "If a person buys land in good faith, believing he is obtaining a good title, and enters into possession thereof, and remains there continuously, uninterruptedly, peaceably, etc. for seven years, that possession ripens into a good title, whether the title he purchased originally was good or bad. The very object of the doctrine of prescription is to make a bad title good when the necessary requisites have been complied with." *Lee* v. *Ogden,* 83 *Ga.* 325, 329 (10 S. E. 349). "When an adverse possessor has held for the requisite period and his prescriptive title ripens, it extinguishes all other inconsistent titles and itself becomes the true title." Powell on Actions for Land, 459, § 349 ; *Danielly* v. *Lowe,* 161 *Ga.* 279 (3) (130 S. E. 687). "When a party claims adversely, it is not necessary for him to show that he went into possession

bona fide, but the burden of showing fraud is upon the opposite party." *Reynolds* v. *Smith*, 186 *Ga.* 838, 842 (199 S. E. 137), and citations.

An inchoate prescriptive title may be transferred by a possessor to a successor, so that the successive possessions may be tacked to make out the prescription, except that the innocent purchaser may not tack to his own the possession of a grantor whose possession originated in fraud of the true owner. Code, §§ 85-415, 85-416. *Blalock* v. *Redwine*, 191 *Ga.* 169 (2) (12 S. E. 2d, 639); *Cliett* v. *Metropolitan Life Ins. Co.*, 195 *Ga.* 257, 267 (24 S. E. 2d, 59).

It is not claimed by the petitioner that in the foreclosure proceeding in 1930 the bank as trustee was guilty of any fraudulent intent in mistakenly advertising the sale in a newspaper other than the one specified in the power of sale in the security deed, or that the bank itself as purchaser was guilty of any fraud. The sole contention is that the sale and deed executed to the bank were void, and that, as the purchaser under foreclosure of the second security deed, the petitioner is entitled to the property upon payment of any indebtedness due on the original loan and which she tendered into court. The defendant, however, in one ground of his defense stands upon title by adverse possession of himself and his predecessors for more than seven years under color of title bona fide, and, hence, under the law the validity of the deed obtained by the bank is not determinative of the issue here. This contention must be upheld and the question becomes: was there color of title and combined adverse possession for the requisite period without fraud being shown in any of the possessors?

The bank, as purchaser of the property in 1930, was not cognizant of the mistake in advertising until 1936. That fact is unquestioned. In 1930, upon purchase by the bank, the debtor yielded the possession and died in 1941 without having made any claim to the property or asserting any right of redemption. All the elements of adverse possession by the bank are shown to have been present. The knowledge it acquired in 1936 as to the error in advertising the property in the foreclosure proceeding did not relate back to the time of its entry in 1930, and its bona fides in such entry was unaffected thereby. The property involved was properly described. It is clear, therefore, that it had an inchoate title by prescription which would ripen in seven years of adverse

possession. Before the title had ripened, it quitclaimed the same property to DeWitt Nunn on September 1, 1936, and he immediately went into possession. There was conflicting testimony as to whether or not Nunn was apprised of the error in advertising in the original foreclosure proceeding, but even if he was aware of such irregularity and the defect would render the bank's deed void as contended by the petitioner, and not merely voidable, which question it is unnecessary here to decide, knowledge of that irregularity would not, under the authorities above cited, necessarily militate against him. If in fact he honestly believed, as his uncontroverted testimony shows, that he was acquiring a good title from the bank, and thus entered into possession with all the elements of adverse possession thereafter present· he too had an inchoate title which could ripen into a good title in seven years. The defendant Dolvin's uncontroverted testimony was that he took his warranty deed from Nunn in the honest belief that he acquired a good title and without knowledge of the irregularity in advertising in the foreclosure proceeding in 1930, and that he entered into possession as owner. The evidence also shows in his favor all the elements of adverse possession.

It thus appears from the evidence that the defendant Dolvin and his predecessors in title had color of title to the property in dispute, and that the adverse possession of such predecessors when tacked to his own was for a period of about thirteen·years, and thus fully met all the requirements of the statute. The title thus acquired extinguished all inconsistent title and became the true title to the property.

It might be added that the act of 1937 (Ga. L. 1937, p. 755), codified as § 85-417 in Ga. Code Ann., and providing that "prescription shall not run against the owner or holder of a mortgage, deed to secure debt, bill of sale to secure debt, or other instrument creating a lien on or conveying an interest in real or personal property as security for debt, in favor of a person who has actual or constructive notice of such instrument," has no application here. This is true notwithstanding that the defendant Dolvin did not acquire any deed until August 5, 1939, after the passage of the act and at a time when the plaintiff's second security deed had been duly recorded, and though without Dolvin's possession a total period of seven-years' adverse possession would not have

resulted. There is nothing in the act of 1937 indicating an intention by the legislature to deprive a party in possession of any right he had already acquired, and that the possession which had been running and ripening into title before February 23, 1937, the date the act became effective, should be lost.. Compare *Pollard* v. *Tait,* 38 *Ga.* 439, 443. Both of the predecessors of Dolvin took paper title in good faith and held adverse possession under ' circumstances which would ripen into an indefeasible and true title in seven years. The bank's inchoate title could undoubtedly be transmitted to Nunn, and likewise Nunn could transmit his inchoate title to Dolvin. It would be a contradiction of terms to say that they could exercise such a right, unhampered by the act of 1937, and yet Dolvin, the defendant, would get no right to perfect the title. To do so would be to give a retroactive effect to the act which this court in *Sweat* . v. *Arline,* 186 *Ga.* 460, 462 (197 S. E. 893), held could not be done. Furthermore, our view of Dolvin's right finds support by analogy in the Code, § 37-114, with which the legislature must be deemed to have been cognizant and which they did not pretend to amend by the act of 1937, and which provides that, "if one without notice shall sell to one with notice, the latter shall be protected, as otherwise a bona fide purchaser might be deprived of selling his property for full value." While the bank acquired its title at an irregular foreclosure sale at a time when the plaintiff in ejectment was the holder of a duly recorded second security deed, its right as a prescriber for seven years under color of title would be no less under the law than that of an innocent purchaser as contemplated by the Code, § 37-114, and the application of the act of 1937 to its status would jeopardize its ability to sell the property as much as in the circumstances guarded against by this Code section. Accordingly, we hold that, as the act of 1937 has no retroactive effect upon the right of the bank and Nunn, each of whom could transmit an inchoate right by their deeds, the defendant Dolvin also acquired the right to perfect the title by tacking to his own possession that of his two predecessors in title.

Nor could the fact that the trustee, when some question had arisen as to whether or not the bank had acquired a good title, began, though it did not complete, a second foreclosure, and that, on July 10, 1936, after the first advertisement appeared, the

amount of rents collected was entered as a credit on the note of the debtor, operate to show any abandonment by the *bank* of its adverse possession.

The verdict directed by the court was demanded as a matter of law, and the court did not err in overruling the plaintiff's motion for new trial.

*Judgment affirmed. Bell, C. J., Jenkins, P. J., Atkinson and Wyatt, JJ., concur.*