## A00A1337. BMH REAL ESTATE PARTNERSHIP
## v. MONTGOMERY et al.
### (540 SE2d 256)

MILLER, Judge.

Hugh L. Montgomery, Jr. ("Jack") and Hugh L. Montgomery III, both individually and as co-executors under the will of Agnes L. Montgomery, filed a petition against BMH Real Estate Partnership ("BMH") seeking to remove an obstruction from an alleged private way across the property of BMH. According to the petition, BMH constructed a new road in nearly the same location as a preexisting road ("the old roadway") long used by the Montgomerys. BMH blocked off the entrance to the old roadway and installed a gate at the entrance to the new road. When BMH subsequently denied requested access to the new road, the Montgomerys sought relief under OCGA §§ 44-9-54 and 44-9-59.

The probate court ruled in favor of the Montgomerys. BMH then appealed to the superior court where a de novo proceeding was conducted without a jury. In a detailed order, the trial court determined that the Montgomerys "have acquired and do possess the rights of a private way over and along the new road." The court ordered BMH either to furnish keys to its gate or remove the gate altogether within 48 hours.

In six related enumerations of error, BMH contends the trial court erred in finding a private way. We affirm. Viewed in the light most favorable to the trial court's judgment, the evidence showed that the Montgomerys own certain real property in Land Lots 377, 378, and 450 and part of Land Lot 415.[1] Before purchasing these lots, Jack Montgomery had used the old roadway for 40 years to access the property north of the railroad tracks to hunt and to take in a tractor and plowing a garden for another Montgomery family who lived on adjacent property. After acquiring the lots adjacent to the roadway in 1983 and 1984, Jack Montgomery used the old roadway to haul out his timber and hay. Using the same roadway, he then replanted pine trees for future harvesting at his certified tree farm. In 1985, to make the road usable year round, he brought in chert by dump truck and spread the chert with a bulldozer. With six inches of chert placed atop

---

[1] In the early 1990s, Jack Montgomery deeded certain properties to his wife, now deceased, and others to his son. He reserved a life estate in part of the property.

the roadway, it held up "real good" for four or five years. Later that same year, Jack Montgomery installed a gate at the entrance to the old roadway to keep out trespassers.

In November 1988, to accommodate persons attending an auction for the sale of property abutting part of the old roadway, Jack Montgomery unlocked his gate to allow access. One attendee at the auction was John Benefield, a co-partner in BMH, the eventual purchaser of the property being auctioned.[2] BMH's purchase consisted of a several hundred-acre tract and a 60-foot-wide "neck" of land which encompassed the old roadway. Benefield admitting having seen that "[a]t the time of the auction, they had graded [the old roadway] and filled the ruts."

After BMH bought the property, Montgomery gave Benefield a key to the lock on the gate because the old roadway was the only access BMH had. In the spring of 1989, however, BMH built a new road, running either parallel to and on the left side of the old roadway or, in some places, atop the old roadway. By positioning a barbed wire fence at the entrance of the old roadway, BMH obstructed the entrance to the old roadway off Bagwell Road, thereby forcing Montgomery and other users of the old roadway to begin using the new road. The new road runs next to the old one and then merges with it at a railroad crossing. Both the old roadway and the new road lie within the 60-foot strip.

According to Jack Montgomery, "after he closed my road, the old road, I used the new road [freely]," from 1989 until September 1998 when he was locked out and BMH denied permission for any further access. By letter from counsel, BMH instructed Jack Montgomery not to use the road or face prosecution for criminal trespass.

1. BMH first contends the trial court erred in finding that general use or other use by the appellees was sufficient to create a private way.

In a bench trial, as here, the trial court sits as the trier of fact and the court's findings will not be set aside unless clearly erroneous.[3] Since the clearly erroneous test is the same as the any evidence rule, an appellate court will not disturb the factual findings of the trial court when there is any evidence to sustain such findings.[4]

A right of private way over another's land may arise from an express grant, from prescription by seven years uninterrupted use through improved lands, by twenty years use through wild lands, or

---

[2] BMH is a real estate partnership composed of John H. Benefield, Jr. and James N. Benefield.

[3] OCGA § 9-11-52 (a); *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693 (527 SE2d 293) (1999).

[4] *Lyon v. State of Ga.*, 230 Ga. App. 264 (495 SE2d 899) (1998).

by necessity.[5] "Whenever a private way has been in constant and uninterrupted use for seven or more years and no legal steps have been taken to abolish it, it shall not be lawful for anyone to interfere with that private way."[6]

To sustain a proceeding under OCGA §§ 44-9-54 and 44-9-59 (a) to remove an obstruction from a private way, the petitioner must show he has been in uninterrupted use of the way for seven years or more, that the roadway does not exceed twenty feet in width, that it is the same route and same number of feet originally appropriated, and that he has kept it open and in repair during such period.[7] The rationale behind the requirement of keeping the roadway in repair is to afford notice of adverse use to the actual owner of the property.[8]

Here, Jack Montgomery testified that the old roadway was the "same road" he had used for various purposes long before he purchased the property nearby. He testified that the old roadway was utilized by his predecessors-in-title for many activities including timbering and hauling pulpwood. No evidence showed that BMH's predecessor-in-title ever prevented Montgomery or his predecessors from using the old roadway or that Montgomery ever sought permission to use it.[9] No question arose as to whether the old roadway exceeded 20 feet in width. And, as the trial court noted, the Montgomerys "made significant repairs to the old road." Plainly, repairing the road and installing a gate at the entrance placed the owner on notice that another person was using the road under a claim of right.[10] Since the evidence supports the trial court's finding that the Montgomerys made the required showings for a private way, its judgment must be affirmed.[11]

2. BMH next claims the trial court erred in finding that the Montgomerys did not abandon the old roadway.

To establish any presumption of abandonment of prescriptive title by mere nonuse, a minimum of 20 years nonuse of the private way must be shown.[12] Here, it is undisputed that the Montgomerys continued to use the old roadway until the spring of 1989 when the new road became available and the entrance to the old roadway was fenced with barbed wire. This is only 11 years nonuse of the blocked

---

[5] See OCGA § 44-9-1.

[6] OCGA § 44-9-54.

[7] *Keng v. Franklin*, 267 Ga. 472 (480 SE2d 25) (1997); *Burnum v. Thomas*, 71 Ga. App. 690, 692 (2) (31 SE2d 925) (1944).

[8] *Ga. Pacific Corp. v. Johns*, 204 Ga. App. 594, 595 (420 SE2d 39) (1992).

[9] *Douglas v. Knox*, 232 Ga. App. 551, 552 (2) (502 SE2d 490) (1998) (successive users may tack prescriptive title under OCGA § 44-5-172).

[10] *Ga. Pacific*, supra, 204 Ga. App. at 595. Accord *First Christian Church &c. v. Realty Investment Co.*, 180 Ga. 35, 43 (178 SE 303) (1934) (on rehearing).

[11] *Lyon*, supra, 230 Ga. App. 264.

[12] *Gilbert v. Reynolds*, 233 Ga. 488, 494 (212 SE2d 332) (1975).

old roadway.

3. BMH then asserts the trial court erred in finding that any use of the new roadway or any roadway by appellees was anything other than a permissive use.

BMH correctly notes that use alone is insufficient to acquire prescriptive title under OCGA § 44-9-1.[13] "An owner's acquiescence in the mere use of his road establishes, at most, a revocable license."[14] When the use of a private way originates by permission of the owner, prescription does not begin to run until the permissive user notifies the owner, by repairs or otherwise, that he has changed his position from mere licensee to prescriber.[15]

BMH's recitation of law misses the mark. The issue is not whether the Montgomerys' private way originated in permissive use while BMH was the owner, but whether BMH's actions effectively modified the Montgomerys' already existing prescriptive rights.[16] We conclude they did.

Once an easement has been acquired, the owner of the servient tenement may not unilaterally alter the path of the easement.[17] When a subsequent owner obstructs part of a private way but permits the private way to be changed a few feet so that its use is continued without interruption, such permissive *change* will not defeat a title by prescription to a private way that has already ripened nor create a new date from which prescriptive title must ripen as to the permitted change.[18] By obstructing the entrance to the old roadway and permitting access to the new road, BMH did not defeat the Montgomerys' already established rights.[19] As noted by the trial court, the Montgomerys "simply accepted the Defendant's improvement and slight relocation and continued to use their private way." The trial court did not err in this determination.

4. BMH's fourth enumeration contends the trial court erred in finding it was estopped from claiming an abandonment by the Montgomerys. This enumeration is itself deemed abandoned for failure to support it with either argument or citation of authority, as required by the rules of this Court.[20]

5. BMH next claims the trial court erred in finding that a private

---

[13] *Eileen B. White & Assoc. v. Gunnells*, 263 Ga. 360, 362 (434 SE2d 477) (1993).

[14] Id.

[15] *First Christian Church*, supra, 180 Ga. at 39.

[16] Compare *Chandler v. Robinson*, 269 Ga. 881, 883 (2) (506 SE2d 121) (1998).

[17] *Thomason v. Kern & Co.*, 259 Ga. 119, 120 (376 SE2d 872) (1989).

[18] *Cook v. Wimpey*, 57 Ga. App. 338 (2) (195 SE 325) (1938), cited as correct statement of the law in *Ridley v. Griffeth*, 216 Ga. 167 (3) (115 SE2d 336) (1960) (factfinder could find that change of a few feet in prescriptive easement did not defeat title since owner's actions necessitated the change and the change could be found to be insignificant).

[19] Id.

[20] Court of Appeals Rule 27 (c) (2).

way existed across BMH's land because Jack Montgomery entered into a Boundary Line Agreement with John W. Bagwell, Jr. on November 23, 1988. BMH argues that Jack Montgomery thereby conveyed any right in his property that would attach to the then-Bagwell property and so to the new road subsequently built by BMH. We disagree.

In this boundary line agreement, Bagwell (BMH's grantor) and the Montgomerys "quit-claim[ed] to the other such area respectively adjoining . . ." the defined boundary line. But the agreement also expressly provided:

> The parties further acknowledge and agree that there exists an old private road running generally north and south along and adjacent to the easterly land lot lines [and] . . . each party grants to the other, their successors and assigns the right of ingress and egress over and across said road.

Reading these two provisions together, it is our view that the quit-claim provision with a cross-grant or retention was framed to exclude from the conveyance any transfer of the Montgomerys' rights in the private road as mutually recognized.[21] And, as we held in Division 3, the evidence authorizes the conclusion that BMH permitted the Montgomerys to adapt their existing private right-of-way onto the new adjacent road for nearly ten years, after BMH blocked access to the old roadway.[22]

6. BMH's contention that the trial court erred by finding any obstruction of any private way by BMH lacks merit. In any event, this enumeration also was waived due to BMH's failure to support it with citations of authority or argument.[23]

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 6, 2000.

*Richard C. Sutton*, for appellant.
*Robert N. Farrar*, for appellees.

---

[21] *Massey Assoc., Ltd. v. Whitehorse Inns of Ga.*, 265 Ga. 320, 322 (454 SE2d 513) (1995).

[22] Compare *Short v. Walton*, 61 Ga. 28 (1878) (It is not sufficient to show that those claiming the prescription were accustomed for more than seven years to pass over the land, changing the way, as they saw fit, to avoid obstructions or for convenience).

[23] *Alexander v. Steining*, 197 Ga. App. 328 (398 SE2d 390) (1990); Court of Appeals Rule 27 (c) (2).