## A06A2437. NORTON v. HOLCOMB.
(646 SE2d 94)

MIKELL, Judge.

Vinnie Worley Holcomb sued Dirone C. Norton in Norton's home county of Cherokee for wilful trespass and intentional infliction of emotional distress, alleging that he unlawfully and intentionally carved out a road and knocked down trees on property she owns in Pickens County. Norton filed a counterclaim in three counts as follows: (1) action to quiet title, OCGA § 23-3-61; (2) condemnation of a private way;[1] and (3) damages for wrongful obstruction. He also moved to transfer the case to Pickens County because the case involved title to land in that county. The trial court denied the motion to transfer and granted summary judgment in favor of Holcomb on her trespass claim and Norton's counterclaim. Norton appeals these rulings. For reasons that follow, we affirm.

> On appeal from a grant of summary judgment, this court conducts a de novo review of the evidence viewed in the light most favorable to the nonmovant, to determine whether any question of material fact exists. Summary judgment is appropriate where the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[2]

So viewed, the evidence shows that in 1996, Holcomb inherited 10.07 acres of land in Pickens County, which had been acquired by her father Ernest Worley in 1944 from Sion Bennett, and was bounded on its northerly side by Cove Mountain Road. In 2003, Norton purchased from U. S. Pipe Realty, Inc., 59.88 acres of land located south of and adjacent to Holcomb's property. The deed of conveyance did not include any express written easement or right-of-way for access to the

---

[1] See OCGA § 44-9-40.

[2] *Hobbs v. Lovelady*, 272 Ga. App. 111, 112 (611 SE2d 661) (2005), citing OCGA § 9-11-56 (c) and *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

property.[3] However, an old unpaved roadbed on Holcomb's land, known as the Marble Company Road, extended from Cove Mountain Road to Norton's property. In 2003, Norton approached Holcomb and offered to trade one and one half acres of his property for one acre of her property, including the Marble Company Road, thereby "eliminating the road that . . . just sort of dissects the middle of her property." Holcomb declined to trade or sell her property at that time.

In 2004, Norton attempted to meet with Holcomb to discuss his plans to hire a timber company to remove trees on his property. Robert Lowery, Holcomb's son-in-law, told Norton that Holcomb would not meet with him and was not interested in trading or selling her land. In June 2004, Norton entered into a contract with Georgia Mountain Forestry Service, Inc. ("GMFS"), to cut and remove timber on his property. Norton testified that he met with GMFS representative Henry Anderson and directed GMFS to use the old roadbed on Holcomb's property to access his property. Norton did not tell Holcomb about his contract with GMFS.

On the morning of June 7, 2004, GMFS began to clear the old roadbed on Holcomb's property, until Lowery objected, advised Norton that he was trespassing and called the police. On June 11, 2004, Norton was advised that barbed-wire cable and a no trespassing sign had been erected across the roadway. On June 14, 2004, GMFS workers returned to the site, removed the cable and sign — as instructed by Norton — and began to cut timber until police ordered them to remove their equipment from the property. According to Norton, GMFS could not remove any timber and left 29 pushed trees laying in the roadbed. When asked if he directed GMFS to push down the trees along the roadbed, Norton testified that "[i]t was at my direction that Henry Anderson authorize [sic] someone or get somebody to do it. I did not know who they were going to hire, but yes. The timber company hired the bulldozer and they, you know accessed the road."

With respect to the road, Norton averred that it had existed since 1883 and had been used by the Georgia Marble Company, but that Holcomb had never given him permission to travel across her property. Norton further testified that he was aware that he could initiate a legal proceeding to obtain a private right-of-way across Holcomb's property, but chose not to do so. Both Holcomb and Lowery testified that there was no road on the property and that Norton cut down trees

---

[3] Norton deposed that he was unaware of any surveys after 1979 that show a roadway running to the property across Holcomb's property. Additionally, Norton acknowledged that he purchased the property without exploring options for obtaining access to it.

to make a road. Holcomb also testified that she did not visit the property from 1970 to 1995, when her mother owned it.

1. OCGA § 44-9-1 provides that

[t]he right of private way over another's land may arise from an express grant, from prescription by seven years' uninterrupted use through improved lands or by 20 years' use through wild lands, [or] by implication of law when the right is necessary to the enjoyment of lands granted by the same owner [or by condemnation in Superior Court].

A related statute concerning easements, OCGA § 44-9-54, states that "[w]henever a private way has been in constant and uninterrupted use for seven or more years and no legal steps have been taken to abolish it, it shall not be lawful for anyone to interfere with that private way." This latter statute has spawned a plethora of opinions which recite that the required time period to acquire a private way is seven years without clearly distinguishing between "wild" and "improved" lands.[4] A 1904 case,[5] however, construes the predecessor statutes "in pari materia" to mean that "[s]even years uninterrupted use will acquire the right of way over improved lands, but twenty years of such use is necessary to establish such right over wild or unimproved lands."[6] That case remains valid today. Consequently, to the extent that the allegedly servient lands in the case at bar are unimproved, 20 years' continuous use is required in order for a prescriptive easement to arise.

2. In several related enumerations, Norton contends that the trial court erred in granting summary judgment to Holcomb on her trespass claim because he acquired a private way by prescription and hence had a right to use the roadway. We disagree.

A claim of prescriptive title requires proof that the possession did not originate in fraud and was (1) public; (2) continuous; (3) exclusive; (4) uninterrupted; (5) peaceable; and (6) accompanied by a claim of

---

[4] See, e.g., *Jackson v. Norfolk Southern R.*, 255 Ga. App. 695 (566 SE2d 415) (2002); *Stover v. Tipton*, 252 Ga. App. 427, 428 (555 SE2d 151) (2001); *Trammell v. Whetstone*, 250 Ga. App. 503, 505 (1) (552 SE2d 485) (2001); *Lopez v. Walker*, 250 Ga. App. 706, 707 (1) (551 SE2d 745) (2001); *Jackson v. Stone*, 210 Ga. App. 465, 467 (2) (436 SE2d 673) (1993).

[5] *Watkins v. Country Club*, 120 Ga. 45 (47 SE 538) (1904), cited with approval in *First Christian Church v. Realty Investment Co.*, 180 Ga. 35, 38 (178 SE 303) (1934).

[6] *Watkins*, supra at 49. See *Gill v. Prehistoric Ponds*, 280 Ga. App. 629, 632 (2) (634 SE2d 769) (2006) ("It is an elementary rule of statutory construction that a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together") (punctuation and footnote omitted).

right.[7] "The use must also be adverse rather than permissive."[8] In order to establish the existence of a private way, Norton was required to make three showings: (1) that he, or a predecessor in title, has been in uninterrupted use of the alleged private way for at least twenty years; (2) that the private way is no more than twenty feet wide, and that it is the same twenty feet originally appropriated; and (3) that he has kept the private way in repair during the period of uninterrupted use.[9] Merely using a roadway is not enough to acquire prescriptive rights.[10]

> To allow a person to acquire prescriptive rights over the lands of another is a harsh result for the burdened landowner. Thus, Georgia courts have strictly construed the elements of OCGA § 44-9-1 against the party who asserts a right of entry over the lands of another. If the prescriber fails to show any of the elements necessary to establish prescriptive rights, he cannot recover.[11]

Possession by different predecessors in interest may be added together when the previous possession also satisfies the other elements of adverse possession.[12] Proof that the claimant made any necessary repairs is required because such repairs would give notice to the owner of the servient land that the use of the roadway was adverse.

Norton claims he is entitled to a prescriptive easement because the roadbed running through Holcomb's property was possessed and continually used by his predecessor in interest, the Marble Company "and its representatives," as a means of access since 1883. As the party opposing summary judgment, the evidence must be construed most favorably to Norton, and he must be given the benefit of all favorable inferences and reasonable doubts which arise from the evidence.[13] However, even utilizing this standard, Norton's evidence is insufficient to raise a question of fact.

Norton tendered several affidavits in opposition to Holcomb's motion. Josh Fitts, a resident of the area for over 80 years, averred

---

[7] *Moody v. Degges*, 258 Ga. App. 135, 137 (573 SE2d 93) (2002), citing OCGA § 44-5-161. See also *Childs v. Sammons*, 272 Ga. 737, 739 (2) (534 SE2d 409) (2000).

[8] (Footnote omitted.) *Moody*, supra.

[9] See id. Though *Moody* states that the prescriber must show uninterrupted use for seven years, as we established in Division 1, the proper prescriptive period in this case is twenty years.

[10] See *BMH Real Estate Partnership v. Montgomery*, 246 Ga. App. 301, 304 (3) (540 SE2d 256) (2000).

[11] (Footnotes omitted.) *Moody*, supra.

[12] *Roylston v. Conway*, 251 Ga. App. 648, 653 (2) (555 SE2d 28) (2001).

[13] *Mitchell v. Haygood's Hauling & Grading*, 194 Ga. App. 671, 672 (1) (391 SE2d 481) (1990).

that the roadbed has existed for as long as he can remember, and that one time in 1957, while he was employed by the Marble Company, his employer instructed him to use the road to access the company's property. Patsy Daniel, another lifelong resident of the area, averred that she traversed the road in the 1940s on her way to pick crabapples and muscadines on the Marble Company property. Bud Duncan, also a lifelong resident of the area, similarly averred that in the 1930s and 1940s his father used the old roadbed to access the Marble Company property. Tom Daniel, a 40-year resident of the area, averred that the road was obvious and always used to get into the Marble Company land. The Pickens County Commissioner averred that he is familiar with the "old road," that the Marble Company constructed many roads in the area, and that some of the roads are still in use today. Norton in his own affidavit averred as follows:

> At the time we purchased this property we were fully aware that the deed of transfer to us did not include any *written easement* to an EXISTING ROADWAY known to me as the Marble Company Road which connected the land we purchased to Cove Road by crossing over property owned by Vinnie Worley Holcomb. However, having grown up on the nearby land, I was very familiar with this old Marble Company Road that runs off of Cove Road . . . and I personally knew that this Marble Company Road had always been used as the means of access to such land. When we purchased the above-referenced tract of land, I was not concerned about the access to the land because of the continued use of Marble Company Road by many people, including but not limited to myself and the prior owners and their representatives. . . . [T]his road had existed and been in continuous use as the access road to the property for all of my lifetime.

(Emphasis in original.) During his deposition, Norton also produced aerial maps from over the last 50 years depicting the roadway in question.

In examining Norton's evidence, we draw reasonable inferences from the admissible evidence after discounting the conclusory assertions contained therein.[14] The assertion that the road has been used as a means of access since 1883 is unsubstantiated, and testimony that the Marble Company built this road and "many" roads is

---

[14] *Keene v. Herstam*, 225 Ga. App. 115, 117 (1) (483 SE2d 335) (1997) ("an affidavit which is conclusory and is unsupported by substantiating fact or circumstances is insufficient to raise a genuine issue of material fact") (citation omitted).

hearsay. On the other hand, the aerial photographs prove that the road existed in 1938 and that it ran to the Marble Company property. Thus, it is a reasonable inference that the Marble Company built this road in 1938 or sometime prior thereto.[15] This inference, however, is not evidence of 20 years of continuous use of the roadway by Norton's predecessor in interest, as is required to acquire a private way by prescription.

Title by prescription requires notice to the owner of the servient property that the use of the roadway is adverse to the title of the servient estate. Building a road across the lands of another may be the strongest possible example of constructive notice to the owner of those lands that the builder is asserting a claim of right and is taking action adverse to the owner's title and interests.[16] But to ripen into prescriptive title over "wild" or unimproved lands, the use must be continuous for 20 years. The aerial photographs in the record show that some sort of gap through the trees continued to exist for at least 50 years, from 1938 to 1988. One could infer from the gap's continued existence that someone continued to use the road. But the law requires that the use be by the person claiming the private way or by his predecessor(s) in interest. Although Fitts averred that the road had existed as long as he could remember, he testified to using it only in 1957, as instructed by his employer. His testimony is clear evidence that Norton's predecessor in interest used the road, by means of its agent Fitts, in 1957.

But there is no evidence of any use by the Marble Company prior to 1938 or between 1938 and 1957. Nor is there any evidence that the Marble Company or U. S. Pipe Realty, Inc., used the road between 1957 and 2003, when Norton purchased his property. Evidence via the aerial photographs that someone used the road cannot be elevated to proof that the Marble Company used the road. Patsy Daniel, a lifelong resident of the area said that she used the road "on her way to pick crabapples and muscadines" on the Marble Company property. Such a traverse would seem to be a lark and frolic of her own. The testimony by Bud Duncan, that his father used the road to access the Marble Company's property and the testimony by Tom Daniel that the road was "always" used to get into its property, both lack any assertion that the Marble Company was using the road. The road, i.e., the gap in the trees shown in the aerial photographs, could have been kept open by hunters, loggers, or by Holcomb's predecessors in

---

[15] Our use of "built" is giving the claimant the benefit of every inference. The record is silent as to the nature of the roadway. We do not know whether making it required excavation and grading or merely clearing trees so that horses and wagons could get through.

[16] See generally *Roylston,* supra, citing *Fraser v. Dolvin,* 199 Ga. 638, 642 (34 SE2d 875) (1945); *Chancey v. Ga. Power Co.,* 238 Ga. 397, 398 (1) (233 SE2d 365) (1977).

interest. Proof that the general public used a roadway does not prove that a particular individual has obtained a private way by means of *his* — or his predecessor in interest's — continuous use of the roadway.

The record is silent as to the Marble Company's use of the allegedly dominant property, and we will not speculate on it. Norton's brief describes the parcel as "rugged mountain land." By contrast, for example, in *Anneberg v. Kurtz*,[17] the evidence established that a cannery used the waterway to dispose of waste seasonably for five months out of every year for the required number of years.[18] In *BMH Real Estate Partnership*,[19] the two claimants themselves used the disputed roadway for forty years to hunt, to take in a tractor to plow on adjacent property, to haul out timber and hay, and to replant pine trees on a tree farm.[20] Except for the one use by its agent Fitts in 1957, evidence of the Marble Company's use of this disputed road is absent from the record.

Because the record contains no evidence that the Marble Company or its agents used the road continuously for at least twenty years, it did not acquire a private way by prescription and Norton has no private way by prescription over Holcomb's land.

3. Norton contends the evidence was insufficient to support a finding that his trespass on Holcomb's land was intentional. Rather, Norton claims his trespass was innocent because he believed the road had been used continuously by the Marble Company and its representatives. Norton also disputes the trial court's finding that he changed the character of the road instead of merely clearing the roadbed.

The burden is on Norton to show that his trespass was innocent.[21]

A wilful trespasser can be defined in general terms as one who knows that he is wrong, while an innocent trespasser is one who believes that he is right. The question as to whether the trespass was wilfully or innocently done is generally for

---

[17] 197 Ga. 188 (28 SE2d 769) (1944).

[18] Id. at 192 (1).

[19] Supra.

[20] Id. at 301. See also, e.g., *Anneberg*, supra; *Lee v. Collins*, 249 Ga. App. 674, 677 (3) (547 SE2d 583) (2001) (claimant and his guests used road on weekends for ten years).

[21] *Young v. Faulkner*, 228 Ga. App. 587, 588 (492 SE2d 331) (1997); *Autry v. Adams*, 95 Ga. App. 207, 209 (97 SE2d 585) (1957); *Santiago v. Cauley*, 2005 U. S. Dist. LEXIS 34768 (II) (S.D. Ga. 2005). See generally *Black v. Ga. Power Co.*, 151 Ga. App. 727 (261 SE2d 461) (1979) (punitive damages authorized where utility, which was under a mistaken belief that it owned an easement – and advice of its counsel – bulldozed trees on plaintiff's property after being told not to enter).

the jury to determine, except in those cases where the trespasser acts with such entire want of care and reckless indifference as would clearly amount to a disregard of the rights of the other party.[22]

Notwithstanding the condition of the road, the evidence clearly shows that Norton was not an innocent trespasser. It is undisputed that Norton directed GMFS to clear the roadbed and cut timber on Holcomb's property knowing that he did not have a written easement or permission from Holcomb to access her property. It is also undisputed that on or about June 11, 2004, Norton directed GMFS to remove newly erected barbed wire and a no trespassing sign across the roadbed.[23] Norton also acknowledged that he could have initiated a legal proceeding to obtain a private right-of-way across Holcomb's property, but chose not to.

As we ruled in Division 2, Norton's belief that the road was used "continuously" by the Marble Company was not the evidence needed to prove that the Marble Company had acquired a private way.[24] Because the Marble Company had not acquired a private way, Norton had no right to be on Holcomb's property. Accordingly, we agree with the trial court that Norton's trespass was wilful and intentional.[25] It follows that the trial court correctly granted Holcomb's motion for summary judgment on her trespass claim.

Because trespass is an intentional tort, Holcomb is entitled at least to nominal damages.[26] The leading case on damages for trespass

---

[22] (Citation and punctuation omitted.) *Young*, supra.

[23] Id. (summary judgment authorized when trespasser had notice that his belief in his ownership may have been unsound); *Groves v. City of Atlanta*, 213 Ga. App. 455, 456-457 (1) (444 SE2d 809) (1994) (summary judgment for *defendant* affirmed when evidence clear that trespass was innocent). But cf. *Nichols v. Ga. Television Co.*, 250 Ga. App. 789, 790 (1) (552 SE2d 550) (2001) (summary judgment for defendant not authorized when reasonableness of belief not clear); *Santiago*, supra (summary judgment for defendant not authorized; burden on defendant to show his innocence).

[24] See *Eileen B. White & Assoc. v. Gunnells*, 263 Ga. 360, 362 (434 SE2d 477) (1993) ("[u]se alone is insufficient to acquire prescriptive title"), quoting *Cox v. Zucker*, 214 Ga. 44, 52 (4) (102 SE2d 580) (1958). See also *Puryear v. Clements*, 53 Ga. 232, 234 (1) (1874) (evidence must show "constant and *uninterrupted use*") (emphasis in original); *Dunaway v. Windsor*, 197 Ga. 705, 710 (30 SE2d 627) (1944) ("[t]he mere fact that the public uses the property of a private individual is not necessarily inconsistent with the retention of dominion by the owner") (punctuation omitted).

[25] *Young*, supra. But see *Sims v. Majors*, 178 Ga. App. 679-680 (1)-(2) (344 SE2d 501) (1986) (liability determined on summary judgment; issues of intent and damages reserved for jury). See generally C. Adams, Georgia Law of Torts, § 2-5 (Trespass to Realty) (2007); Pindar's Georgia Real Estate Law and Procedure with Forms, § 1-10 (Right to Exclude) (2007).

[26] *Williams v. Harris*, 207 Ga. 576, 579 (2) (63 SE2d 386) (1951). Accord *Page v. Braddy*, 255 Ga. App. 124 (564 SE2d 538) (2002).

is *Wright v. Wilcox.*[27] If Holcomb seeks general damages, punitive damages, or attorney fees, Norton may offer, on the issue of damages only, evidence of his belief that he had a right to use the road.

4. Norton contends that the trial court erred in granting summary judgment to Holcomb on his counterclaims. The trial court ruled as follows:

> Additionally, [Norton's] counterclaim, denominated as an action to quiet title, does not present a question of fact that must be resolved by a jury. A plaintiff in an action to quiet title must assert that he holds some current record title or current prescriptive title, not only an expectancy, in order to maintain his suit. . . . For the reasons stated above, [Norton] has failed to establish by the evidence of record that he has a meritorious claim of prescriptive title, and has admitted that he had no title of record. Accordingly, [Holcomb's] Motion for Summary Judgment against [Norton's] Counterclaim is hereby GRANTED.

Norton contends that the trial court erred in granting summary judgment on his claim to quiet title because he acquired an easement by prescription. In light of our ruling in Division 2, this argument is meritless and the trial court correctly granted summary judgment to Holcomb on this claim.

5. Norton next contends that the trial court erred in denying his motion to transfer the case to Pickens County because this case concerns title to land in that county. We disagree.

A suit involving title to land shall be brought in the county where the land lies.[28] This provision does not apply, however, where the title is incidentally involved only, and is not directly put in issue.[29] An action for trespass does not involve title to land and venue for such a case is proper in the defendant's county of residence.[30] In this case, Norton's prescriptive claims are incidental to Holcomb's claim that he

---

[27] 262 Ga. App. 659 (586 SE2d 364) (2003). See generally OCGA § 51-12-2 and cases cited therein; Georgia Law of Damages with Forms, § 27-3 (Damages for Trespass) (2007). But see *Brown v. Smith*, 2007 Md. App. LEXIS 44 (2007).

[28] Ga. Const. of 1983, Art. VI, Sec. II, Par. II. Compare Ga. Const. of 1983, Art. VI, Sec. II, Par. VI, which provides generally that a civil case shall be tried in the county where the defendant resides.

[29] *Anderson v. Black*, 191 Ga. 627, 631 (13 SE2d 650) (1941) ("[i]f an action be one for trespass to realty, and not one to recover possession of the land, ownership of the land is only incidentally involved, and the fact that the land may be situated in another county will not deny jurisdiction to determine the main controversy, even though it depends upon the contested ownership of the realty") (citation omitted).

[30] See id. Compare *Hayes v. Howell*, 251 Ga. 580, 581-582 (1) (308 SE2d 170) (1983) (in action against mineral owner for declaratory judgment, claiming ownership of certain mineral

wilfully trespassed on her land. Accordingly, the suit was properly brought in Cherokee County, Norton's county of residence.

6. Norton further contends that the trial court erred in finding that the prescriptive rights of a grantor over servient, adjacent land do not pass with title unless specifically mentioned in the deed. The precedent cited by the trial court, *Olsen v. Noble*,[31] merely holds that inchoate rights do not pass by deed unless mentioned in the deed.[32] However, a grantee's title to the prescriptive rights acquired by a predecessor passes by statute and by common law and not by deed. *Olsen* is inapposite to the case at bar. But the trial court's error, if any, on this point was harmless in view of our ruling above that Norton's predecessor in interest never acquired a private way over Holcomb's property.

7. The case is still pending in the court below. Although the trial court granted summary judgment to Holcomb as to Norton's liability on the trespass claim, damages must still be determined. Moreover, the trial court did not address Norton's counterclaims for wrongful obstruction of a private way and for condemnation of such a way. Though Norton's wrongful obstruction claim is moot in light of our rulings above, his claim for condemnation is not. Accordingly, after Holcomb's claim for damages has been finally resolved, the trial court should dismiss the claim for condemnation of a private way, without prejudice to Norton's right to begin or continue litigation on that claim in the Superior Court of Pickens County.

8. The record shows positively that the road has existed since at least 1938. But the law requires continuous use by the claimant, Norton, or his predecessors in interest, for twenty years. The dissent relies heavily upon Norton's own affidavit in which he testifies that he lived in the area and personally knows of "continuous use" by the Marble Company "and its representatives" for all of his life.

If Norton's affidavit is not discounted as being conclusory then very few affidavits will be discounted as being conclusory. There is no substantiating detail. Did the Marble Company use the road for one week every ten years to remove timber from its land? Did it use the road once each year to get in and check its property lines? Norton himself has used the road only since 2003.

We cannot rule as a matter of law that the Marble Company's use was continuous, because the record does not reveal what that use was. A claimant who seeks land by adverse possession, when faced by

---

and oil rights by adverse possession, venue was proper in county where land is located, as specifically provided by OCGA § 44-5-168 (b) (1)).

[31] 209 Ga. 899 (76 SE2d 775) (1953).

[32] Id. at 906 (1).

a properly supported motion for summary judgment, may not rest on his pleadings. He also may not rest on a conclusory affidavit as to the ultimate issue.

*Judgment affirmed in part and case remanded with direction. Ruffin, Phipps and Adams, JJ., concur. Andrews, P. J., Blackburn, P. J., and Smith, P. J., dissent.*

BLACKBURN, Presiding Judge, dissenting.

I respectfully dissent. The majority opinion concludes that Norton tendered "insufficient" evidence to support a finding that the road running through Holcomb's property was used continuously by the Marble Company for 20 years so as to entitle him to a prescriptive easement as the successor in interest of the Marble Company. I disagree.

As set forth in the majority opinion, Norton's own 2006 affidavit sets forth (1) that Norton (who was 55, having been born in 1951) grew up and lived his entire life near the properties in question, thus establishing his personal knowledge of the use of the roadway in question; (2) that he was very familiar with the roadway in question; (3) that he "personally knew that this Marble Company Road had always been used as the means of access to such land"; (4) that based on his personal observations, the Marble Company and its representatives had continually used the roadway as the access road to the property until it was sold to him in 2003; and (5) that since his purchase, he had so used the roadway himself on a continuous basis. Norton also produced aerial maps showing the markings of the roadway over 50 years to back up his testimony. Thus, we have direct evidence that the road was continuously used for over 20 years by the Marble Company and its representatives (and then by the successor-in-interest Norton), and thus an issue of fact was created as to this matter.

I disagree with the majority's discounting this concise testimony as conclusory and unsupported by substantiating fact or circumstances. It is true that, as stated in *Keene v. Herstam*,[33] "an affidavit which is conclusory and is unsupported by substantiating fact or circumstances is insufficient to raise a genuine issue of material fact." Here, however, as in *Keene*, supra, the affiant Norton set forth substantiating facts and circumstances; he gave direct testimony that over his lifetime he had observed the continuous use of the road by the Marble Company and its representatives and that he had so used the road himself to access the Marble Company land. Norton may not have listed each day and time when such occurred, but such

---

[33] *Keene v. Herstam*, 225 Ga. App. 115, 117 (1) (483 SE2d 335) (1997).

is not required, as specific detail goes to the weight, not the competence of the testimony. See *McLean v. Clark*[34] ("That it does not sufficiently go into details; that it is general; that the witness states, as facts, which other parts of the testimony show he was mistaken in, or did not know that these or like objections may be charged against it, are objections to its weight and not to its competency").

Significantly, when Holcomb took Norton's deposition, Holcomb carefully avoided asking for the specifics of Norton's observations. See *McLean*, supra ("True, he might, when questioned, go into greater detail, and it is the power of the other side to push the inquiry into those details"). We should hardly reward Holcomb for her coyness by now saying that insufficient specifics have been identified to substantiate Norton's clear testimony.

The question therefore is whether we can simply ignore Norton's testimony of his *personal observations* of continuous use and the 50-year-old aerial maps which showed such usage. The majority concludes that we can. I disagree. "Affidavit testimony must speak for itself. On summary judgment it is inappropriate for this Court to weigh evidence or determine its credibility." (Punctuation omitted.) *Walden v. Burke*.[35] To reject this testimony on the basis that Norton has given insufficient details is a classic case of weighing testimony.

This is a summary judgment case. We must construe the record, including all inferences, in favor of the nonmovant Norton. In this context, I cannot say that Norton has produced insufficient evidence of continuous use. Accordingly, I dissent.

I am authorized to state that Presiding Judge Andrews and Presiding Judge Smith join in this dissent.

DECIDED MARCH 29, 2007 —
RECONSIDERATION DENIED APRIL 13, 2007 — ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮

*William A. Neel, Jr.,* for appellant.
*Downey & Cleveland, George L. Welborn, Elizabeth H. Brabham,* for appellee.

---

[34] *McLean v. Clark*, 47 Ga. 24, 67 (1) (1872).
[35] *Walden v. Burke*, 282 Ga. App. 154, 156 (2) (637 SE2d 859) (2006).